[No. 24450. *En Banc.* October 26, 1933.]

THE STATE OF WASHINGTON, *on the Relation of D. C. Moulton, Appellant,* v. THE CITY OF SPOKANE *et al., Respondents.*[1]

*Milton S. Hanauer* and *Donovan & Donovan,* for appellant.

*Alex M. Winston* and *G. M. Ferris,* for respondents.

BLAKE, J.—On January 14, 1932, the relator was duly appointed, in accordance with the rules and regu-

[1] Reported in 26 P. (2d) 89.

lations of the civil service commission of the city of Spokane, to the position of patrolman in the police department. The effective date of the appointment was January 16th, on which date relator entered into the performance of his duties. On July 19, 1932, the chief of police sent the following communication to the civil service commission:

"City of Spokane
"CIVIL SERVICE COMMISSION
"Discharge of Probationer
"Spokane, Wash.
"Civil Service Commission,              July 19, 1932.
"Gentlemen:
"On January 16, 1932, D. C. Moulton was appointed on probation to the position of patrolman, Police Division, and has served in this capacity to the present time.

"He has failed to meet the requirements of this Department in the position to which he was appointed, and I recommend that his services be discontinued for the following reasons:
"Service Unsatisfactory.

"Upon receipt of a statement of your approval of this recommendation, he will be dropped from the service.
"Approved:
"LEONARD FUNK                     ARTHUR L. HOOPER,
"  (Head of Department)       (Appointing Officer)
"Commissioner of Public Safety   Chief of Police
"  (Official Title)                (Official Title)"

Within ten days thereafter, relator filed with the civil service commission a notice of appeal from the order of discharge. The civil service commission declining to hear the appeal and the chief of police refusing to restore him to the position of patrolman, relator filed in the superior court of Spokane county a petition for a writ of mandate directed to the respondents. In his petition, relator set up the facts substantially as above narrated, and alleged that

he had been wrongfully discharged. He prayed that a writ of mandamus issue requiring respondents to reinstate him in the position of patrolman, and that he have judgment against the city for the amount of his salary during the period of wrongful separation from his position.

An alternative writ was issued on relator's petition. Respondents interposed a demurrer to the petition and a motion to quash the alternative writ. The demurrer was sustained, and the motion to quash the alternative writ was granted. Relator appeals.

The charter of the city of Spokane creates a civil service commission, and confers power upon the commission, with the approval of the city council, to make rules providing for classification and examination of city employees, and to fix a probationary period to be served by all employees before their employment may become permanent. Pursuant to this authority, the civil service commission, with the approval of the city council, adopted, among other rules, the following:

"Rule 7. . . .

"§ 9. Probationary period: All persons certified from an original entrance eligible list shall be on probation for a period of six (6) months of actual service. The probation period shall not include time served as a provisional employee but shall date from the time of regular appointment from an eligible list. Within ten days of the termination of such probationary period, the appointing official shall file a report with the commission certifying that said employee has met the requirements of the department. Upon receipt of such report by the commission, the appointment shall be deemed complete.

"§ 10. Incompetent Probationers: If the appointee shall be found incompetent or inefficient in the performance of the duties of the position he is filling, the appointing official shall certify same in writing to the commission and such probationer shall be dropped from the service."

■ The determination of the issue presented in this case turns on the interpretation to be given these sections. If, under § 9, relator's probationary period had expired, then he was entitled to all the rights of a permanent employee, and he could not be discharged, except for cause, and then only upon the filing, by the chief of police, of formal charges with the civil service commission. As a permanent employee, it is conceded he would have a right to appeal from such order of discharge and to a hearing before the commission.

While § 9 is not free from ambiguity, there is one thing it definitely provides for. That is, that the period of probation shall be "six months of actual service." It is not for six months and one day, nor six months and ten days. It then provides that the appointment shall be complete when the appointing official reports to the commission and certifies that the employee has met the requirements of the department. But this, we think, is merely an administrative act, required of the appointing official for the purpose of clearing the records of the department and of the civil service commission. For, in terms, the duty imposed by the section is mandatory. There is no option left to the official after the expiration of the probationary period.

It is contended by respondents, however, that, under § 10, the appointing official may reject the probationer for inefficiency or incompetency at any time within ten days subsequent to the expiration of the probationary period. We do not think that § 10 is susceptible of this interpretation. To so construe it, violates a cardinal rule of statutory construction, namely, that seemingly conflicting statutes will be so interpreted as to make them both effective. To place the suggested construction on § 10, would necessitate reading into it a provision that is not there, and would impair the plain

and explicit terms of § 9. In other words, the suggested construction of § 10 would necessarily extend the period of probation to six months and ten days.

We do not think such was the purpose of § 10. It is, in effect, a proviso appended to § 9, empowering the appointing official to discharge the probationer during the probationary period and depriving the probationer of the right to appeal and hearing from such order of discharge. It is not its purpose to extend the period of probation. The purpose of a probationary period is to give the appointing official an opportunity to determine whether or not the probationer is efficient and competent. Obviously, the purpose of § 10 is to have the question of the probationer's efficiency and competency subject to the determination of the appointing official *during the probationary period.* He must determine the question, however, before the expiration of the period of probation. Otherwise, by § 9, the duty is imposed upon him, within ten days thereafter, to certify the employee's qualifications to the civil service commission. We think the court erred in sustaining the demurrer to the petition and in quashing the alternative writ.

The judgment is reversed, and the cause remanded for further proceedings.

MAIN, MITCHELL, TOLMAN, HOLCOMB, and MILLARD, JJ., concur.

GERAGHTY, J., took no part.

STEINERT, J. (dissenting)—I do not agree with the reasoning or the conclusion of the majority opinion. Sections 9 and 10 of rule 7 of the civil service commission of Spokane deal with the same general subject matter, namely, probationers and probationary periods, and are, therefore, to be read together. When so read, it seems obvious to me that the logical conclusion

to be drawn from them is that the appointing official may, at any time within ten days subsequent to the expiration of the probationary period, make and file his report concerning the probationer.

In the majority opinion it is said:

"Obviously, the purpose of § 10 is to have the question of the probationer's efficiency and competency subject to the determination of the appointing official *during* the probationary period. He must determine the question, however, before the expiration of the period of probation. Otherwise, by § 9, the duty is imposed upon him, within ten days thereafter, to certify the employee's qualifications to the civil service commission."

In other words, according to the majority, the function of the appointing official is quasi-judicial *during* the probationary period, but merely administrative thereafter, and if he fails to certify, *within* the probationary period, that the probationer is *not* qualified, he must then, within ten days after the expiration of the period, certify that the probationer *is* qualified.

I do not place that construction upon the civil service rules. The probationary period is fixed at a *full* term of six months of actual service, and *during* that period the appointing official is not required to do anything. When the period has expired, then he is called upon to make his report within ten days. According to the majority, the moment that the probationary period expires the probationer becomes, *ipso facto,* qualified for the position unless an adverse report has been filed in the meantime, and the appointing official has no alternative but to certify the probationer's qualification, regardless of whether he is, in fact, qualified or unqualified. Such a construction obviously makes the probationary period something less than the full six months' period, because, under the con-

struction of the majority, it necessitates the filing of the report *within* that time.

The prevailing opinion adverts to the probationary period of six months, and says that "it is not for six months and one day, nor six months and ten days." By the same token, the probationary period is not for one day less than six months, nor ten days less than six months. What the rule, as a whole, obviously means is that there shall be full six months of actual service by the probationer, during the whole of which his conduct is subject to observation and scrutiny by the appointing official, and that, upon its completion, the appointing official shall, within ten days, certify that the probationer either has, or has not, met the requirements.

The certificate is not, as the majority opinion states, merely an administrative act. It is a quasi-judicial act by which the competency or efficiency of an employee is determined by the official who has that responsibility placed upon him by the rules of the commission. Until his judgment is pronounced, or the time for its pronouncement allowed to lapse, the appointment is not complete. To hold otherwise is to say that one who has not met the requirements shall, nevertheless, be entitled to appointment, merely because he has completed six months of probationary service, whether he be found qualified or not. That is neither the spirit nor the intent of the rules of civil service.

The phrase "within ten days *of* the termination of such probationary period" is, as the majority say, ambiguous. But to say that *of,* as used therein, is to be read in the sense of *within* seems to me to be a forced and impractical construction. If a statute should require an officeholder to file his oath of office within ten days *of* his appointment or election, could it be said

that he was thereby required to file his oath at the moment of, or within ten days prior to, such appointment or election?

Again, suppose an employee holding a position of trust were required by his employer to furnish a fidelity bond. The bond, let us say, contains a provision to the effect that, ''within ten days of the employee's termination of employment,'' the employer shall make a report to the bonding company relative to the employee's services. Would it be supposed that a report made within ten days preceding the termination of the employment would absolve the employer from making a report concerning the defalcations committed thereafter and within the period of employment? The only reasonable construction to be placed upon such provision in a bond would be to require the employer to make the report within ten days after the employment had ceased. The same construction, I think, should be given to the two sections of the ordinance here in question.

I therefore dissent.

BEALS, C. J., concurs with STEINERT, J.