143 Ariz. 166 (1984)
692 P.2d 1015
Thomas P. GROVE, Jr., a single man; Robert L. Lutes, a single man; Larry Hust and Carmen Hust, husband and wife; and Joe Fisher and Mary Ann Fisher, husband and wife, Plaintiffs/Appellants,
v.
ARIZONA CRIMINAL INTELLIGENCE SYSTEM AGENCY (ACISA); Law Enforcement Merit System Council (LEMSC); and the State of Arizona, Defendants/Appellees.
No. 2 CA-CIV 4982.
Court of Appeals of Arizona, Division 2.
May 30, 1984.
Review Denied December 11, 1984.
Richard B. Arrotta, Tucson, for plaintiffs/appellants Grove and Lutes.
Lansdale & Kneip, P.C. by Gary S. Kneip, Tucson, for plaintiffs/appellants Hust and Fisher.
Chandler, Tullar, Udall & Redhair by John E. Osborne, Tucson, for defendants/appellees.
*167 OPINION
HOWARD, Judge.
This is an appeal from the trial court's finding that appellants were properly discharged from their employment with the Arizona Criminal Intelligence System Agency (ACISA).
Prior to July 25, 1981, appellants were employees of the Arizona Drug Control District (ADCD) and were under the merit system jurisdiction of the Arizona State Personnel Board. Effective July 25, 1981, the legislature created ACISA, A.R.S. § 41-2151 et seq., transferring all the personnel of ADCD and all of its records, furnishings, equipment and unexpended funds to ACISA. A.R.S. § 41-2157(C) provides that employees of ACISA are under the Law Enforcement Merit System Council established by Title 28, Ch. 2, art. 2. At the same time the legislature amended the enabling statute for the Law Enforcement Merit System Council (LEMSC), A.R.S. § 28-235, which statute at that time read as follows:
"C. The council shall:
1. Select a chairman and secretary.
2. Hold meetings necessary to perform their duties on call of the chairman.
3. Pursuant to recognized merit principles of public employment, from time to time:
(a) Classify or reclassify all positions in the department of public safety, from a list of necessary employees prepared by the director.
(b) Establish standards and qualifications for all classified positions.
(c) Provide a plan for fair and impartial selection, appointment, retention and separation or removal from service by resignation, retirement or dismissal of all classified employees.
4. Pursuant to recognized merit principles, hear and review appeals from any order of the director of the department of public safety and the director of the Arizona criminal intelligence system agency in connection with suspension, demotion or dismissal of a classified employee. The council's determination is final, except upon appeal as provided in § 28-236.
5. The council shall prepare an annual recommendation to the legislature and joint legislative budget committee of a salary plan and adjustments to the plan for employees subject to the jurisdiction of the law enforcement merit system council. Such recommendations shall be made on or before December 1 of each year. The recommendation when completed shall be transmitted to the legislature and joint legislative budget committee through the department of administration personnel administration division."
When ACISA was created the following administrative rules and regulations had been adopted by LEMSC:
"Rule 13-5-11
* * * * * *
F. Exchange Or Transfer of Employees: When the agency assumes responsibility for and there is transferred to it a function from any other state agency. The Business Manager may determine the extent, if any, to which employees employed by such other state agency on the date of transfer shall be entitled to have credited to them in the agency service, seniority credits, accumulated sick leave and accumulated vacation because of service with the former agency. The Business Manager shall limit such determination to the time any transferred employees were employed in the specific function or a function substantially similar while in the former agency and such seniority credits and accumulated sick leave and accumulated vacation shall not exceed that to which each employee would be entitled if he had been continuously employed in the agency service.
G. Transferee Status: All such employees transferred shall commence service with the agency as probationers. * * *"
*168 The term "probationary status" is defined in the rules and regulations as follows:
"R13-5-02.
44. PROBATIONARY STATUS. The status of an employee who has been certified and appointed from an employment list, or who has been re-employed after resignation, or who has been transferred or demoted but who has not completed the probationary period provided by these rules."
Rule R-13-5-35(A) sets a probationary period of one year and subsection C provides:
"C. Rejection: Any probationer may be rejected by the agency head during the probationary period for reasons relating to the probationer's qualifications, the good of the service, or failure to demonstrate merit, efficiency, fitness, or moral responsibility."[1] (emphasis added)
On July 15, 1981, a notice that all former employees of the ADCD would come under the jurisdiction of LEMSC subject to its exiting rules and regulations was sent to Jim Howard, acting director of the ADCD.
On or about September 1, 1981, the four appellants were dismissed "for the good of the agency." They filed formal objections to their dismissals contending that they were full-time permanent state employees not on probationary status as was stated in their letters of dismissal. They further contended that the dismissals were arbitrary, capricious and constitutionally infirm under state and federal law.
On September 14, 1981, the LEMSC sent appellants letters detailing the investigative procedure authorized by the LEMSC's administrative rules and regulations for the investigation of the dismissals of rejected probationers. Meanwhile, the attorney for appellants Fisher and Hust attempted to appeal his clients' dismissals to the Arizona State Personnel Board, the merit system for other state employees. However, that board declined jurisdiction stating that ACISA was not under the Arizona State Personnel Board's jurisdiction.
Appellants' complaints were investigated by the entire LEMSC at an open meeting on November 12, 1981. Appellants Hust and Fisher made short statements to the council to the LEMSC. Appellants Grove and Lutes did not make any statement to the LEMSC. ACISA, represented by its assistant director, William Willis, also presented its position to the LEMSC regarding appellants Fisher and Hust. The LEMSC requested copies of the depositions of ACISA director Frank Navarette and assistant director Willis regarding the matter and appellants' personnel files were available.
On January 6, 1982, the LEMSC notified appellants that a decision on their dismissals would be made by the LEMSC at an open meeting on January 13, 1982. The LEMSC met on that date and by letters dated January 14, notified appellants that the LEMSC had affirmed their dismissals. Appellants moved for a rehearing of the LEMSC's decision, which motion was denied at an open meeting.
On June 1, appellants filed this action for administrative review pursuant to A.R.S. § 12-901 et seq. After making findings of fact and conclusions of law, the trial court entered judgment in favor of the appellees.
Appellants contend that LEMSC had no power to treat them as probationers and as a result their dismissals were arbitrary and capricious.
Appellants contend that they did not become probationary employees when they became employees of ACISA but retained their permanent status they enjoyed under ADCD because (1) the statutes creating ACISA do not specifically address the issue of the merit status of ACISA employees upon their transfer from ADCD, (2) A.R.S. § 28-235(C)(3)(a) gave LEMSC no authority to classify or reclassify positions within ACISA until the statute was amended in *169 1982 which was after appellants had already been discharged, and (3) the rules and regulations adopted by LEMSC, on their face, did not apply to ACISA employees.
Appellants also contend their discharge was arbitrary, capricious and unlawful because (1) there was never a lawful decision to place appellants in a probationary status, (2) the procedures applied by LEMSC could not apply to them because they were not on probationary status and (3) the LEMSC failed to follow its own rules and regulations.
Were appellants, after the creation of ACISA, subject to the rules and regulations of LEMSC? We believe the answer is in the affirmative. It seems clear that the intent of the legislature was to give LEMSC the same jurisdiction over ACISA employees as it had over employees of the Department of Public Safety. The meaning of A.R.S. § 41-2157(C) which states: "Employees of the agency are under the law enforcement merit system established by title 28, chapter 2, article 2" is unambiguous. Without deciding the rest of the issues raised by appellants, we focus in on what we believe to be the determinative issue in this case. Could LEMSC apply Rule 13-5-11(G) to the personnel of ADCD who were already permanent state employees?
There is no doubt that the state can give a civil service commission the authority to adopt rules requiring that original appointments in the classified service shall be for a probationary period of a certain number of months. See Velger v. Cawley, 366 F. Supp. 874 (D.C.N.Y. 1973); State ex rel. Moulton v. Spokane, 174 Wash. 679, 26 P.2d 89 (1933); Blake v. Lindblom, 225 Ill. 555, 80 N.E. 252 (1907); Fish v. McGann, 205 Ill. 179, 68 N.E. 761 (1903); People ex rel. Kastor v. Kearney, 49 App.Div. 125, 62 N.Y.S. 1097, affd. 164 N.Y. 64, 58 N.E. 14 (1900); 15A Am.Jur.2d Civil Service § 33; 62 C.J.S. Municipal Corporations § 719(b). And see Annot. 131, A.L.R. 383, Validity, Construction, and Application of Probationary Provisions of Civil Service Statutes or Regulations. A.R.S. § 28-235(C)(3)(b) and (c) give LEMSC the authority to make rules relative to probationary status. However, a rule adopted by an administrative agency must be in accordance with the statutory authority vested in it, must be reasonable, and must be adequately related to the purpose of the act and neither arbitrary nor in contravention of any expressed statutory provision. People ex rel. Charles v. Telford, 48 Ill. App.3d 928, 6 Ill.Dec. 799, 363 N.E.2d 613 (1977). Here, the rules as applied to appellants is unreasonable, not adequately related to the act creating ACISA or A.R.S. § 28-235, and is arbitrary.
A probationary appointment is made to afford an opportunity to observe the fitness of the probationer while at work and to ascertain whether he will become a proper and efficient employee. People ex rel. Heffernan v. Smykal, 13 Ill. App.2d 342, 142 N.E.2d 133 (1957); Application of Sinaly, 2 Misc.2d 107, 152 N.Y.S.2d 210 (1956); Matz v. City of Clairton, 340 Pa. 98, 16 A.2d 300 (1940). The passing of a competitive examination for a classified position does not mean that the person can actually perform it and the agency is entitled to have the employee in a probationary status to ascertain whether it is probable that he will become a proper and efficient employee. McCartney v. Johnston, 326 Pa. 442, 191 A. 121 (1937).
Here, ADCD was transferred lock, stock and barrel to ACISA, and its personnel carried on essentially the same function as before. The major differences were that the Arizona Drug Control District was comprised of only four counties  Cochise, Pima, Santa Cruz and Yuma  whereas ACISA is a state-wide agency and ADCD had authority to bring prosecutions in narcotics and drug abuse cases whereas ACISA performs an intelligence-gathering function only, but relative to all crimes.
The purposes of a probationary period were not furthered in this case. The day after the creation of ACISA the former personnel of ADCD were doing essentially *170 the same things as they were the day before, except their agency had a new title. To apply R-13-5-11(G) to permanent employees of ADCD is unreasonable and arbitrary. Their positions were never classified and the statutory authority allowing LEMSC to do so was not passed until after appellants were discharged. If the purpose of probation is to determine whether they can perform in their new appointment as a classified employee, how can they be on probation for a non-existent classified position?
Appellees argue that it was really the legislature which put appellants in a probationary status when it made them subject to LEMSC and that as long as it acts in good faith it can terminate civil service employees. See Gallas v. Sanchez, 48 Hawaii 370, 405 P.2d 772 (1965). If it can terminate them, it surely can put them on probation, appellees argue. See Laws 1975, Chap. 162, the act which created ADCD. We find this analogy to be imperfect. There is a difference between dismissal and transfer. There is no reason to take away an employee's permanent status by the mere fact of transfer alone.
Pointing to Laws 1982, Chap. 286, § 14(B), appellees assert that when the legislature wants to exempt transferred employees from the application of the LEMSC rule on probationary status, it knows how to do so, therefore, its failure to exempt ADCD personnel from the operation of the rule, it intended the rule to be applicable. We do not agree. It is true that by virtue of Laws 1982, Chap. 286, the legislature specifically provided that certain personnel transferred from the Corporation Commission to the Department of Public Safety were not to be subject to a probationary period as a result of the transfer, but this law was enacted after the events here took place and could just have well been a response to the inequitable situation that was created.
Since appellants were still permanent employees, they were entitled to procedural rights accorded to permanent employees by the rules and regulations. Since that was not done in this case, they were unlawfully discharged.
The judgment of the trial court is reversed and the trial court is ordered to enter a judgment in appellant's favor, reinstating them as permanent employees of ACISA and determine, after a hearing, the amount of compensation to which appellants are entitled.
BIRDSALL, C.J., and HATHAWAY, J., concur.
NOTES
[1] The rules and regulations were never amended and in many places appear not to apply to ACISA. For example, "agency head" as used in R-13-5-35(C) is defined as the head of the Department of Public Safety in R-13-5-01(2).