WANDA PYRDOL ET AL. *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT

SUPERIOR COURT    NEW HAVEN COUNTY    FILE No. 110673
AT NEW HAVEN

Memorandum filed June 12, 1967

*Daniel Baker,* of Stamford, for the plaintiffs.

*Harold M. Mulvey,* attorney general, and *Harry Silverstone* and *Carl D. Eisenman,* assistant attorneys general, for the defendant.

FitzGerald, J. The within case is an appeal from the decision of the unemployment commissioner for the third district which affirmed the ruling of the administrator, thereby holding that the claimants-appellants, hereinafter referred to as the plaintiffs, were ineligible for benefits under § 31-236 (4) of the General Statutes, which provides that an individual is ineligible for benefits during any week with respect to which he has received a dismissal payment or any other payment by way of compensation for loss of wages. The plaintiffs in all total sixty-two in number if the addition of the court is correct. They were employed by Sperry and Barnes in New Haven, a division or plant of Swift and Company of Chicago. Their respective periods of employment ranged from a few years to many years, the longest period of employment (Louis Amendola) being forty-one years. They became unemployed on February 19, 1965, when Swift and Company, hereinafter called the company, closed its New Haven division or plant.

The plaintiffs were members of Local 163 of the United Packinghouse Food and Allied Workers, A.F.L.–C.I.O., and the terms and conditions of their employment were fixed in a labor management master agreement entered into between the company and the union, which agreement was applicable to twenty-one plants of Swift and Company, of which company Sperry and Barnes was a division or plant. When the plant was closed and the plaintiffs were dismissed, the company, pursuant to the agreement, paid in a lump sum (1) a separation allowance, com-

puted on the basis of years of service, plus accrued vacation pay to the plaintiffs who were not eligible for a pension, and (2) a supplemental allowance equal to eight weeks' pay plus accrued vacation pay to such as were entitled to a pension.

The plaintiffs filed claims for unemployment benefits which the administrator disallowed because of the receipt of the aforesaid payments. They appealed, and the unemployment commissioner concluded that such payments were either a dismissal payment or other payment by way of compensation for loss of wages within the meaning of § 31-236 (4) of the General Statutes with respect to the weeks after dismissal and affirmed the administrator's decision. From the decision of the commissioner the plaintiffs have appealed to this court. The plaintiffs also filed with the unemployment commissioner a motion to correct the finding of facts, which the commissioner denied in toto. The motion to correct for the most part seeks to rewrite the entire finding of facts and to add, in paraphrase form, approximately twenty-six sections or subsections of the master agreement. Counsel for the defendant concedes on appeal that the finding of facts is meager and that the relevant sections of the agreement should be added, but claims that, as set forth in the proposed motion to correct, these sections of the agreement are restated as interpreted by the plaintiffs and that in such form they are not admitted or undisputed facts. The finding of facts should, however, be corrected by adding in the way of general reference the entire master agreement, which is an exhibit, and is so corrected. So, also, all exhibits are made a part of the finding.

As stated, the finding of facts is admittedly meager. Paragraphs 1-8 thereof justify modest elaborations in the way of further and limited

specifications; so also paragraphs hereinafter labeled 3a and 11 are added thereto. No further corrections thereto are made. As corrected, the finding of facts now reads as follows:

(1) The plaintiffs were employees of Swift and Company of Chicago, at its Sperry and Barnes division plant at New Haven, Connecticut, and were actively in its employ until that plant on February 19, 1965, shut down, at which time, because of that shutdown, they were separated from their employment at that plant.

(2) The sole and exclusive bargaining agent was the United Packinghouse Food and Allied Workers, A.F.L.–C.I.O.; the plaintiffs were members of Local 163, affiliated therewith.

(3) The master labor management agreement entered into by Swift and Company and the union, effective from September 1, 1964, covered the employees in twenty-one plants of the company, including the New Haven plant; said agreement was in effect at all times during the period in issue.

(3a) Successive collective bargaining agreements executed by the company and the union over a period of at least ten years had contained provisions for the payment of separation allowances to employees in the bargaining unit subject to the terms thereof.

(4) On November 13, 1964, the company gave notice, as provided in the master labor management agreement, § 77, to its employees that the plant was to be closed, effective February 19, 1965.

(5) Although the company, as provided in the agreement, §§ 78 (a) and (c), offered transfers, prior to the closing, no plaintiff requested such transfer.

(6) Those employees, as provided in the agreement, who were entitled to pensions received a supplementary allowance, equivalent to eight weeks' pay, on February 19, 1965; said allowance was paid to assist in adjustment from work level of income to retirement level; normally it would take eight, ten or twelve weeks after the employee was separated from his employment before the pension payment became effective.

(7) Separation allowances, as provided in § 71 of the agreement, in one lump sum, and vacation pay, as provided in § 30, were paid to the plaintiffs on February 19, 1965.

(8) The agreement, § 71 (d), gave the option to the employees to elect to receive the separation allowance in a lump sum; all of the plaintiffs elected to receive the separation allowance in a lump sum.

(9) Since the company did not shut down for vacation, some of the plaintiffs had already received their vacation pay prior to termination.

(10) It is found that the supplemental pay, vacation pay and separation allowances constituted remuneration in the form of dismissal payments, or payment by way of compensation for loss of wages.

(11) All of the exhibits introduced into evidence before the unemployment commissioner are made part of the finding of facts as corrected by the court and reflected in the foregoing.

On this appeal, the court is concerned solely with § 31-236 (4) of the General Statutes, with particular reference to subsection (a) thereof, in its application to the subject matter of this appeal. As stated by our Supreme Court in the comparatively recent case (1959) of *Zabrowski* v. *Administrator,* 146

Conn. 215, 218: "The legislative purpose in adopting the provisions in § 31-236 (4) (a) relating to disqualification was to prevent a duplication of benefits to an individual with respect to a week in which he was receiving payment from his employer as compensation for loss of wages." The basic questions for decision are these: (1) Were the payments which the plaintiffs received remuneration in the form of dismissal payments or payments by way of compensation for loss of wages within the meaning of § 31-236 (4)? (2) Were such payments made with respect to the period following the termination of employment? The answer to these questions as to the separation allowance necessarily turns on the interpretation of the provision of the agreement under which payments were made, to wit, § 71, titled "Separation Allowance."

## I

In *Brannigan* v. *Administrator,* 139 Conn. 572, 575, it was said: "[D]ismissal payments are usually associated with a termination of the employment relationship for reasons primarily beyond the control of the employee." The termination of the employment of the plaintiffs in this case was for reasons beyond their control—they were involuntarily dismissed. Under the agreement, the payments, denominated "separation allowances," were to be made on dismissal. In *Zabrowski* v. *Administrator,* supra, it was held in effect that a payment which was to be made on retirement was retirement pay, even though it was from a profit sharing plan and in fact deferred compensation. The Supreme Court emphasized that the time when payment is to be made under the contract determines the nature of the payment. The payment in question is therefore a dismissal payment. The plaintiffs were dismissed; on dismissal each was entitled to receive

and did receive a "separation allowance"; the payment was a dismissal payment within the meaning of the statute.

## II

The payments were made with respect to the period following the termination of employment. Section 71 (d) of the agreement reads as follows: "(d) Payments—The amount due under the policy shall be paid as follows: (1) If less than the equivalent of four (4) weeks' pay—in one lump sum. (2) Amounts over a total of four (4) weeks' pay—weekly installments of full wages until the total amount is exhausted. The employee may, at his option, elect to receive such amount in a shorter period of time or in one lump sum. (3) In the event of death, any unpaid balance shall be paid to the widow or dependents."

The named plaintiff was entitled to a separation payment of $2601.60, an amount equal to twenty-four weeks' pay. Under the agreement, this amount, being equivalent to more than four weeks' pay, was to be paid in weekly instalments for twenty-four weeks after the dismissal or termination of employment. Had it been so paid, there could not possibly be any doubt that the payment was made with respect to such weeks and she would be disqualified for such period. It is true that she had the option, and exercised the option, to receive a lump sum. Did this option give her the right to convert the nature of the payment or the period with respect to which it is paid and become eligible for unemployment compensation benefits for which she would not otherwise be eligible? The nature of the payment as contemplated in the agreement was not changed—even though paid in a lump sum, it was paid under the terms of the agreement with respect to the twenty-four weeks after the dismissal.

## III

As to the supplemental allowance which was paid pursuant to the provision titled "Closing of Department or Plant," this payment was made to assist in adjustment from work level of income to retirement level and was made on dismissal. It is a dismissal payment "to alleviate the consequent need for economic readjustment." *McGowan* v. *Administrator,* 153 Conn. 691, 693. It is a payment by way of compensation for loss of wages for a period of eight weeks after the termination of employment.

## IV

As to vacation pay. Our Supreme Court has twice held that vacation pay is a "payment by way of compensation for loss of wages" within the meaning of § 31-236 (4) of the General Statutes. *Kelly* v. *Administrator,* 136 Conn. 482, 487; *Conon* v. *Administrator,* 142 Conn. 236, 245; cf. *McGowan* v. *Administrator,* supra. In any event, under the agreement, no vacation pay is payable except when a vacation is actually taken; and when the plant is closed, as it was in the instant case, the amount due as vacation pay becomes part of the separation allowance. Section 71 (c) of the agreement, titled "Method of Computing Separation Allowances," states: "To the separation allowance computed as per the example, add vacation pay for the current calendar year if the employee has qualified for but not taken such vacation."

### Conclusion

The limited correction of facts by the court made in the earlier part of the within memorandum in no way affects the result obtained before the commissioner. Cases of other jurisdictions cited by the parties need not be explored. The commissioner's conclusions of disqualification of the plaintiffs for

the benefits sought by them, affirming the ruling of the administrator, were not unreasonable, arbitrary or illegal, and it cannot be held, on the record before the court, that he acted unreasonably, arbitrarily or illegally. His action and position are sustainable. Accordingly, judgment is required to be entered dismissing the appeal.

The appeal is dismissed.