181 Ariz. 20 (1994)
887 P.2d 550
Don WATAHOMIGIE, Rex Tilousi, and The Havasupai Tribe, a Federally Recognized Indian Tribe, Plaintiffs-Appellants,
v.
ARIZONA BOARD OF WATER QUALITY APPEALS; Harold Merkow, Hearing Officer, Arizona Department of Environmental Quality; Union Pacific Minerals, a Utah Corporation, Defendants-Appellees.
No. 1 CA-CV 93-0142.
Court of Appeals of Arizona, Division 1, Department C.
April 21, 1994.
Opinion Granting Reconsideration in Part July 28, 1994.
Review Denied January 24, 1995.
*22 Sparks & Siler, P.C. by Joe P. Sparks, Kevin T. Tehan, Scottsdale, and Norling, Perry, Pierson & Kolsrud, P.C.L. by Russell A. Kolsrud, Nancy L. Rowen, Phoenix, for plaintiffs-appellants.
Grant Woods, Atty. Gen. by James T. Skardon, Paula S. Bickett, Asst. Attys. Gen., Phoenix, for Arizona Dept. of Environmental Quality.
Meyer, Hendricks, Victor, Osborn & Maledon, P.A. by Donald M. Peters and Jennings, Strouss & Salmon by James D. Vieregg, Phoenix, for Union Pacific Minerals.

OPINION
TOCI, Presiding Judge.
The Arizona Department of Environmental Quality ("ADEQ") issued an aquifer protection permit authorizing Union Pacific Minerals ("UPM") to operate a uranium mine. Don Watahomigie, Rex Tilousi, and The Havasupai Indian Tribe (collectively, "Tribe") filed a notice of appeal with the Arizona Board of Water Quality Appeals ("Board") challenging issuance of the permit. After the Board dismissed the administrative appeal, the Tribe sought judicial review of the order of dismissal and of an order in limine entered by the Board. The Maricopa County Superior Court granted summary judgment against the Tribe. This appeal followed.
We must decide whether the Board erred in dismissing the Tribe's appeal because of deficiencies in the notice of appeal. In order to resolve this question we must decide several subordinate issues: (1) did the Board have the statutory authority to regulate the contents of the notice of appeal, (2) is Arizona Administrative Code ("A.A.C.") R2-1-708 invalid because the Board did not promulgate it until after the January 1, 1988 date as required by Ariz. Rev. Stat. Ann. ("A.R.S.") section 49-322(D), (3) do the Board's regulations violate the equal protection *23 clause, (4) did the Board deprive the Tribe of due process of law when it dismissed the Tribe's appeal without any consideration on the merits, and (5) did the Tribe properly comply with the notice of appeal requirements in A.A.C. R2-1-708? We must also decide whether the Board abused its discretion when it granted a motion in limine and denied the Tribe leave to supplement its notice of appeal. Finally, we must decide whether A.R.S. section 49-323(B) (1988) requires dismissal of an appeal if a hearing does not begin within the sixty-day period required by A.R.S. section 49-323(B).
We resolve these issues as follows. We conclude that the regulations promulgated by the Board are valid and enforceable and that the Board did not err in dismissing the Tribe's appeal for deficiencies in the notice of appeal. We further conclude that the Board did not abuse its discretion when it granted the motion in limine and denied the Tribe leave to supplement its notice of appeal. Finally, we conclude that the Board did not err in dismissing the appeal on the ground that the evidentiary hearing did not begin within the sixty-day period required by A.R.S. section 49-323(B) (1988). Accordingly, we affirm.
I. FACTUAL AND PROCEDURAL HISTORY
On March 6, 1989, UPM filed an application with ADEQ for an aquifer protection permit so that it could build and operate a uranium mine. The location of UPM's proposed mine site is approximately six miles south of Hualapai Hilltop on the south rim of the Grand Canyon, 50 miles northeast of Peach Springs in Coconino County, Arizona. The proposed mine is located just south of the southern boundary of the Havasupai Indian Reservation in the Coconino Plateau Groundwater Basin and directly over a geological formation known as the Redwall-Muav Aquifer. This aquifer feeds the Havasu Springs, which is a source of water for Supai Village on the Havasupai Indian Reservation.
In December 1990, ADEQ held public hearings in both Flagstaff and Supai, Arizona, concerning UPM's aquifer protection permit application. See A.A.C. R18-9-124; see also A.A.C. R18-1-401, A.A.C. R18-1-402. The purpose of these hearings was to inform the public of the exact nature of UPM's permit application and to allow interested persons to make statements and submit written comments. See A.A.C. R18-1-402(D). At the hearing held in Supai, various members of the Tribe voiced their opposition to UPM's permit application. The Tribe's attorneys were also present at this hearing.
On May 17, 1991, ADEQ issued an aquifer protection permit authorizing UPM to operate the uranium mine. Once ADEQ made its decision to issue the permit to UPM, any person adversely affected by that decision had a right to appeal the issuance of such permit to the Board. See A.R.S. § 49-323(A).
On June 17, 1991, the Tribe filed a notice of appeal with the Board challenging the issuance of the aquifer protection permit to UPM. Both UPM and ADEQ moved to dismiss the Tribe's appeal or, in the alternative, for an order in limine preventing the Tribe from calling any witnesses or introducing any exhibits not listed on the notice of appeal at the evidentiary hearing. UPM and ADEQ based their motions on the Tribe's failure to follow the disclosure requirements in its notice of appeal as required by A.A.C. R2-1-708(B)(6)-(7) and R2-1-708(C).
On July 15, 1991, the Tribe filed three "supplements" to its initial notice. These supplements identified twenty-six issues the Tribe intended to raise. Many of these issues were highly technical. Additionally, the supplements identified numerous exhibits and sixteen witnesses, including several experts in hydrology and geology. The Tribe made these supplemental disclosures approximately three weeks before the start of the evidentiary hearing.
At the same time it filed the supplemental disclosures, the Tribe responded to UPM and ADEQ's motions to dismiss. The Tribe argued that the Board's disclosure rules were unauthorized and could not be enforced against the Tribe. It also argued that the Board had no power to dismiss the appeal *24 because no statute or rule gave it such authority. The Tribe further claimed that since UPM and ADEQ had received all required information through the filing of the Tribe's supplements, the motions to dismiss were moot.
On August 1, 1991, the Board heard oral argument on the motion to dismiss. At the hearing, the Tribe failed to explain to the satisfaction of the Board why the newly-disclosed witnesses had been unknown when the Tribe filed its initial notice of appeal. Also, UPM alleged that one of the Tribe's supplementally-disclosed experts had testified for the Tribe in another of the Tribe's cases being handled by the same attorney. According to UPM, the expert's identity was known to the Tribe all along and should have been disclosed when the notice of appeal was filed. At the conclusion of the hearing, the Board found the Tribe's notice of appeal deficient. The Board concluded that the Tribe's conduct had caused prejudice to both UPM and ADEQ, for which no adequate cure existed. Accordingly, the Board granted both UPM's and ADEQ's motion to dismiss the Tribe's appeal.
On August 15, 1991, the Tribe filed a motion for rehearing. On October 17, 1991, the Board vacated its previous dismissal of the Tribe's appeal. Additionally, the Board granted a motion in limine, which had initially been made by UPM and ADEQ as an alternative to their motion to dismiss. The order in limine limited the parties to calling only "those witnesses identified in the notice of appeal and ... answer" at the evidentiary hearing. The order also allowed the Tribe to use any documents on record with ADEQ as exhibits and placed no limitation on the issues that the Tribe could raise. The Board also ordered that a hearing commence within thirty days.
On December 16, 1991, UPM filed a second motion to dismiss the Tribe's appeal. It argued that the Arizona Supreme Court's then-recent decision in Neal v. City of Kingman, 169 Ariz. 133, 817 P.2d 937 (1991), showed that the Board properly dismissed the Tribe's appeal. UPM also indicated that several key witnesses for UPM and ADEQ had become unavailable during the prolonged delay that had resulted from the Tribe's defective notice of appeal. After a hearing on January 15, 1992, the Board granted UPM's second motion to dismiss.
On January 29, 1992, the Tribe filed another motion for rehearing on the basis that it had not received adequate notice of the January 15, 1992 hearing, that procedural irregularities occurred at the hearing, and that the findings of fact by the Board were contrary to the evidence. On March 4, 1992, the Board granted the Tribe's motion for rehearing and again ordered the Tribe's appeal dismissed. On March 6, 1992, the Board issued its final written decision of dismissal, stating:
For the reasons stated in UPM's second motion to dismiss: (1) that [the Tribe's] notice of appeal did not comply with the requirements of A.A.C. R2-1-708; and (2) that the evidentiary hearing in this matter did not begin within the sixty-day period prescribed by A.R.S. § 49-323(B), the Board lacks jurisdiction to hear [the Tribe's] appeal.
The Tribe sought judicial review in superior court of the Board's dismissal of its administrative appeal and of the order in limine. UPM and ADEQ filed a motion for summary judgment, and the Tribe filed a cross-motion for summary judgment. The trial court entered summary judgment for UPM and ADEQ, and denied the Tribe's motion. On January 21, 1993, the trial court denied the Tribe's motion to vacate and to amend the judgment under Rule 59, Arizona Rules of Civil Procedure. This appeal followed.
II. DISCUSSION
A. Did the Board Err in Dismissing the Tribe's Appeal Due to Deficiencies in the Notice of Appeal?
A party attacking the validity of an administrative regulation has a heavy burden. Massachusetts Nurses Ass'n v. Board of Registration, 18 Mass. App. Ct. 380, 465 N.E.2d 1238, 1244 (1984). See, e.g., Anchorage Sch. Dist. v. Hale, 857 P.2d 1186, 1188 (Alaska 1993); Marshall v. McMahon, 17 Cal. App. 4th 1841, 22 Cal. Rptr.2d 220, 224 *25 (1993); Colorado Civil Rights Comm'n v. Travelers Ins. Co., 759 P.2d 1358, 1366 (Colo. 1988); Capital Electric Line Builders, Inc. v. Lennen, 232 Kan. 379, 654 P.2d 464, 468 (1982); Ravsten v. Department of Labor and Indus., 108 Wash.2d 143, 736 P.2d 265, 271 (1987). See also Miami Copper Co. Div., Tennessee Corp. v. State Tax Comm'n, 121 Ariz. 150, 153, 589 P.2d 24, 27 (App. 1978), cert. denied, 441 U.S. 932, 99 S.Ct. 2053, 60 L.Ed.2d 660 (1979) (administrative construction of a statute is entitled to considerable weight). On review, this court will test an administrative regulation by the same standards that apply to a statute and will indulge all rational presumptions in favor of the validity of the administrative action. Massachusetts Nurses, 465 N.E.2d at 1244 n. 19 (quoting Consolidated Cigar Corp. v. Department of Public Health, 372 Mass. 844, 364 N.E.2d 1202, 1209 (1977)). We will not invalidate such action unless its provisions cannot, by any reasonable construction, be interpreted in harmony with the legislative mandate. Id. Additionally, the validity of any regulation authorized by an enabling act depends not so much on its regulatory or prohibitory nature, but on whether it is reasonable. Outdoor Systems, Inc. v. City of Mesa, 169 Ariz. 301, 306, 819 P.2d 44, 49 (1991).
1. Authority to Regulate the Contents of the Notice of Appeal
The Tribe first argues that the Board had no authority to vary the substantive requirements of A.R.S. section 49-323(A) by adopting an administrative rule  A.A.C. R2-1-708  that requires detailed disclosures in the notice of appeal. We disagree and find that the regulations promulgated by the Board are valid and enforceable.
The Tribe argues that A.R.S. section 49-323(A) sets forth only two requirements to initiate an appeal: (1) the preparation of a notice of appeal and (2) the filing of such notice with the Board within thirty days after receipt of the notice of action being appealed. The Tribe contends that "A.A.C. R2-1-708 enlarged and impaired the scope of A.R.S. [section] 49-323's notice of appeal requirements, and must therefore be declared void." According to the Tribe, the Board's reliance on A.A.C. R2-1-708 to evaluate the sufficiency of its notice of appeal was error. We are not persuaded.
A.R.S. section 49-323(A) states:
An appeal to the appeals board may be taken from any grant, denial, modification or revocation of any individual permit issued under this chapter, or from the establishment of numeric values and data gap issues for pesticides pursuant to §§ 49-303 and 49-304, by any person who is or may be adversely affected by the action. Such appeal shall be initiated by filing a notice of appeal with the board within thirty days after receipt of notice of the action being appealed. Any interested person may intervene in the appeal as a matter of right.
Although the Tribe is correct in asserting that A.R.S. section 49-323(A) states two requirements to initiate an appeal, this section says nothing about the required contents of the notice of appeal; on the contrary, the statute requires only that "[s]uch appeal shall be initiated by filing a notice of appeal." A.R.S. § 49-323(A) (emphasis added).
Additionally, A.R.S. section 49-322(D) gives the Board the authority to "adopt rules of procedure to govern the conduct of hearings before the [B]oard." This language indicates the legislature's intent that the rules of procedure adopted by the Board would do more than simply reiterate the provisions of the Administrative Procedure Act ("A.P.A."). Furthermore, the Board's regulations requiring detailed disclosure in the notice of appeal are reasonable and adequately related to the legislature's intent to provide for expedient appeals. See Grove v. Arizona Criminal Intelligence Sys. Agency, 143 Ariz. 166, 169, 692 P.2d 1015, 1018 (App. 1984) (rules adopted by agency must be reasonable and adequately related to the purpose of the act).
The Tribe further argues that the legislature's incorporation of the A.P.A.'s "notice, hearing and other procedures" in A.R.S. section 49-323(C),[1] when read with *26 the directive in section 49-322(D) that the Board "adopt rules of procedure to govern the conduct of hearings,"[2] leaves no room for the Board to regulate the contents of a notice of appeal. The Tribe then argues that because it prepared its notice of appeal in accordance with the contested case hearing requirements of A.R.S. section 41-1061 (1992), it adequately complied with the notice of appeal requirements and, therefore, the Board erred in dismissing its appeal. We disagree with the Tribe's reading of these statutory sections.
Section 41-1061(A) states:
In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice. Unless otherwise provided by law, the notice shall be given at least twenty days prior to the date set for the hearing.
(Emphasis added.) Section 41-1061 does not discuss the content requirements of a notice of appeal; this section refers only to the requirements for a notice of hearing. In this case, we are dealing with a notice of appeal, not a notice of hearing. Accordingly, we find no merit in the Tribe's argument that because it complied with the contested case requirements of A.R.S. section 41-1061 its notice of appeal is legally sufficient.
Finally, the Tribe argues that even if the Board has the authority to regulate the contents of the notice of appeal, it cannot require the parties to make detailed disclosures in the notice of appeal itself. The Tribe contends that a notice of appeal in an administrative proceeding is comparable to a legal summons, and is therefore nothing more than an instrument for initiating the action and acquiring jurisdiction over a party. Thus, the Tribe contends that the Board exceeded its authority by adopting a rule requiring that the notice of appeal do more than simply initiate the appeal. We disagree. Although the primary function of a notice of appeal is to initiate an appeal, no valid reason exists for holding that a properly adopted administrative regulation may not require additional information in a notice of appeal.[3]
2. Adoption of Regulation Concerning Notice of Appeal
Next, the Tribe argues that even if the Board had the authority to adopt rules governing the contents of a notice of appeal, the rules were not properly adopted and are therefore invalid. The Tribe contends that these regulations are invalid because the Board failed to adopt them before January 1, 1988, the deadline established by the legislature for adopting such regulations. See A.R.S. § 49-322(D) ("[n]ot later than January 1, 1988, the board shall adopt rules of procedure"). The Tribe has not cited any authority, however, to support its contention.
Rule 13(a)(6), Arizona Rules of Civil Appellate Procedure, requires that arguments in an appellant's opening brief "shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." (Emphasis added.) As we have previously stated in Coggins v. Wright, 22 Ariz. App. 217, 219, 526 P.2d 741, 743 (1974), we will not consider issues not properly briefed. See also State Farm Mut. Auto. Ins. Co. v. Novak, 167 Ariz. 363, 370, 807 P.2d 531, 538 (App. 1991) (court will not address arguments on appeal if opening brief does not contain contentions of appellant with respect to issues presented). Thus, we decline to address the Tribe's argument on this point.
*27 3. Equal Protection
The Tribe challenges the constitutionality of the Board's regulations on equal protection grounds,[4] arguing that the regulations treat permit applicants and non-permit applicants differently. The Tribe argues that because non-permit applicants are excluded from the ADEQ permit process, they stand in a "distinctly different and disadvantageous position if they attempt to challenge the issuance of a permit." We reject these arguments. We conclude that because all members of the class challenging ADEQ's issuance of a permit are treated equally, no equal protection violation exists.
Initially, it should be noted that there is a strong presumption supporting the constitutionality of a statute or an administrative regulation. See Eastin v. Broomfield, 116 Ariz. 576, 580, 570 P.2d 744, 748 (1977); Toto v. Industrial Comm'n of Arizona, 144 Ariz. 508, 510, 698 P.2d 753, 755 (App. 1985); cf. Massachusetts Nurses, 465 N.E.2d at 1244 n. 19 (administrative regulation tested by same standards applied to statutes). Additionally, the party asserting its unconstitutionality bears the burden of overcoming the presumption. Eastin, 116 Ariz. at 580, 570 P.2d at 748; Toto, 144 Ariz. at 510, 698 P.2d at 755. Here, the Tribe has not overcome the presumption that the regulations are constitutional.
Furthermore, the equal protection clause is satisfied if all persons within a class are treated alike. State ex rel. Babbitt v. Pickrell, 113 Ariz. 12, 14, 545 P.2d 936, 938 (1976); Arizona State Tax Comm'n v. Frank Harmonson Co. Metal Prods., 63 Ariz. 452, 459, 163 P.2d 667, 670 (1945); Baseline Liquors v. Circle K Corp., 129 Ariz. 215, 219 n. 3, 630 P.2d 38, 42 n. 3 (App.), cert. denied, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 387 (1981). Here, the Board's regulations do not provide for differential treatment among permit applicants and those opposed to the granting of a permit. All individuals challenging ADEQ's decision to grant, deny or modify a permit are treated alike and must comply with precisely the same requirements when bringing an appeal. All appeals must be filed "within thirty days after receipt [by the appellant] of notice of the action being appealed," A.R.S. section 49-323(A); A.A.C. R2-1-704(A), and must comply with the notice of appeal disclosure requirements of A.A.C. R2-1-708. Additionally, any individual opposing the appeal must make equivalent disclosures within twenty days. A.A.C. R2-1-709; A.A.C. R2-1-710. Consequently, the Tribe's equal protection challenge to the Board's regulations has no merit.
4. Due Process of Law
The Tribe argues that because the Board dismissed its appeal without any consideration of the merits, it was denied a meaningful opportunity to be heard, and therefore, denied due process of law.[5] Again, we disagree. We conclude that because the Tribe's appeal was dismissed for failure to comply with the Board's appeal procedures, the Tribe was not deprived of due process.
The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. Huck v. Haralambie, 122 Ariz. 63, 65, 593 P.2d 286, 288 (1979); Morrison v. Shanwick Int'l Corp., 167 Ariz. 39, 42, 804 P.2d 768, 771 (App. 1990). When this opportunity to be heard is granted to a complainant who chooses not to exercise it, that complainant cannot later plead a denial of procedural due process. Satterfield v. Edenton-Chowan Bd. of Educ., 530 F.2d 567, 572 (4th Cir.1975); see also McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Dept. of Business Regulation of Florida, 496 U.S. 18, 21 n. 21, 110 S.Ct. 2238, 2242 n. 21, 110 L.Ed.2d 17 (1990) ("The availability of a predeprivation hearing constitutes a procedural safeguard against unlawful deprivations sufficient by itself to satisfy the Due Process Clause, and taxpayers cannot complain if they fail to avail themselves of this procedure."); United States v. An Article of Device "Theramatic," 715 F.2d 1339, 1343 (9th Cir.1983), cert. denied, 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 685 (1984) ("A defendant cannot contend *28 that he did not obtain a prompt hearing when he chose not to avail himself of an opportunity to present his claim.").
Here, the Tribe was not denied any meaningful right to be heard on the merits of its appeal. The Board dismissed the Tribe's appeal only after the Tribe repeatedly failed to comply with the appeal procedures required by the Board. Having failed to avail itself of the opportunity to be heard, the Tribe cannot now claim a denial of due process.
5. Compliance with Notice of Appeal Requirements
The Tribe argues that, assuming the Board's regulations are valid, the Tribe's notice of appeal satisfied the disclosure requirements of A.A.C. R2-1-708. We disagree. Because we conclude that the Tribe's notice of appeal did not comply with the Board's notice of appeal regulation, A.A.C. R2-1-708, we hold that the Board did not err in dismissing the Tribe's appeal for deficiencies in the notice of appeal.
We begin by observing that whether the Tribe properly presented its notice of appeal to the Board for review is a legal question. This court independently reviews questions of law. Sunpower of Arizona, Inc. v. Arizona Dept. of Economic Sec., 175 Ariz. 109, 111, 854 P.2d 142, 144 (App. 1993); Havasu Heights Ranch and Dev. Corp. v. Desert Valley Wood Prods., Inc., 167 Ariz. 383, 387, 807 P.2d 1119, 1123 (App. 1991).
The hearing on appeal conducted by the Board must be a full evidentiary hearing. A.A.C. R2-1-721(A). In order to ensure that a plenary hearing can be conducted within the sixty-day period required by A.R.S. section 49-323(B), the Board adopted special rules of procedure. See A.A.C. R2-1-701 through R2-1-731. Under these rules, detailed disclosures must be made by the parties at the commencement of the appeal. A.A.C. R2-1-708; A.A.C. R2-1-710. These disclosures provide the parties with their only opportunity to obtain information concerning the basis of the appeal, the witnesses who will be testifying at the hearing, and the exhibits that will be presented at the hearing. The notice of appeal must contain a reasonably detailed statement of the basis of the appeal, A.A.C. R2-1-708(B)(7), must list all witnesses expected to be called at the hearing, A.A.C. R2-1-708(B)(6), and shall attach all exhibits that may be relevant to the appeal, A.A.C. R2-1-708(C). The respondent must make similar disclosures in its answer. A.A.C. R2-1-710.
Here, instead of a notice of appeal identifying "[i]n reasonable detail, the specific action of the [ADEQ] ... which are the bases of the appeal," A.A.C. R2-1-708(B)(7), the Tribe merely stated the basis of appeal as "Issuance of Aquifer Protection Permit for Permit No. P-102018 dated May 17, 1991; Exhibit `C' attached." This statement advised UPM and ADEQ only that the Tribe was appealing the issuance of the permit; it did no more. Thus, because the Tribe failed to specifically identify any errors it believed occurred in the issuance of the aquifer protection permit to UPM, it failed to comply with the plain language of A.A.C. R2-1-708(B)(7).
The notice of appeal regulations also require the Tribe to identify "[t]he names, addresses and telephone numbers of all witnesses the appellant believes the appellant may call at the hearing." A.A.C. R2-1-708(B)(6). The Tribe failed to specifically list the "names, addresses and telephone numbers" of witnesses it would call at the hearing, stating only that "[a]ppellants object to this requirement as being premature and unreasonably burdensome prior to discovery." The Tribe's notice then identified only general categories of possible witnesses it might call at the hearing. This generalized listing of witnesses does not satisfy the requirements of A.A.C. R2-1-708(B)(6).
Additionally, the Board's regulations require that the Tribe "attach to the notice of appeal copies of all the documents in the possession of the appellant ... which the appellant may want to introduce into evidence at the hearing." A.A.C. R2-1-708(C). Again, the Tribe's notice of appeal did not satisfy this requirement. In its notice of appeal, the Tribe objected "to this requirement as being premature and unreasonably broad, vague and burdensome prior to discovery." The Tribe then went on to specify *29 broad categories of documents that it might introduce at the hearing. The only exhibits attached by the Tribe were a copy of the permit and documents relating to publication of the proposed permit in newspapers.
Viewing the facts in a light most favorable to upholding the decision of the Board, Sunpower, 175 Ariz. at 112, 854 P.2d at 145, we conclude, as did the trial court, that the Tribe "failed substantially to comply with the disclosure requirements of the notice of appeal." As noted by the trial court:
[A]lthough they recited ... the facts of the unique human and natural qualities of the Havasu Canyon area, nowhere do they suggest that the [A]DEQ made a particular decision refusing to consider it; nor, for instance, is there an offer of proof from an expert under oath opining that the hydrologic studies were defective in a particular way. The [Tribe's] position then, as it is now, is generic and uninformative about any particular appealable defect in the [A]DEQ process or in its decision. Thus, there was nothing to offset the Board's finding of prejudice to [UPM and ADEQ] from allowing the appeal to remain live.

(Emphasis added.) We agree and find no abuse of discretion in the dismissal of the Tribe's appeal for noncompliance with the notice of appeal requirements of A.A.C. R2-1-708. See also Neal, 169 Ariz. at 135-36, 817 P.2d at 939-40 (notice of appeal which did not mention the legal theory of vested rights or mention facts which would give rise to the application of such a legal theory, did not properly present issue to appeals board).
B. Did the Board Act Arbitrarily and Capriciously and Abuse its Discretion When it Granted the Motion in Limine and Denied the Tribe Leave to Supplement its Notice of Appeal?
The Tribe argues that the Board abused its discretion in not permitting the Tribe to supplement its initial notice of appeal to cure the defects in its notice. UPM and ADEQ, on the other hand, contend that allowing supplements to the notice of appeal is discretionary, and that the Board did not abuse its discretion. We agree with UPM and ADEQ. We find that the Board neither abused its discretion by entering the order in limine nor by denying the Tribe leave to supplement its notice of appeal.
On July 15, 1991, approximately one month after it filed its notice of appeal, the Tribe filed three supplements to its notice. These supplements identified twenty-six issues that the Tribe intended to raise. Many of these issues were highly technical. The supplements also identified sixteen witnesses and numerous exhibits. These disclosures, made approximately three weeks before the evidentiary hearing, gave UPM and ADEQ their first information about the basis of the Tribe's appeal.
Both UPM and ADEQ objected to the Tribe's attempt to supplement its notice of appeal. The Board ultimately entered an order in limine limiting the Tribe to "those witnesses identified in the notice of appeal." The order also allowed the Tribe to use any documents on record with ADEQ as exhibits but placed no limitation on the issues that the Tribe could raise. The practical effect of the Board's order in limine was to prevent the Tribe from supplementing its notice of appeal to include additional witnesses and exhibits.
The Board found that the Tribe made no showing that the supplemental witnesses or exhibits were unknown to the Tribe at the time it filed its notice of appeal. The Board's chairman stated, "there is no evidence ... that these additional witnesses and exhibits were totally unavailable to the appellant at the time of the initial appeal notice." According to the Board, the Tribe's conduct had caused prejudice to both UPM and ADEQ and no adequate cure for the prejudice was available. In dismissing the Tribe's appeal, the Board concluded that without supplementation the Tribe's notice of appeal was deficient. We agree.
In examining the validity of the Board's ruling, we first turn to the Board's regulation. Regulation A.A.C. R2-1-722(B) states:
Any party may call additional witnesses or introduce into evidence additional documents not disclosed by the party in its notice of appeal or answer if that witness or document was not or could not reasonably *30 have been known to that party at the time the party filed its notice of appeal or answer.

(Emphasis added.) This section allows a party at the evidentiary hearing to introduce witnesses and exhibits previously undisclosed in the notice of appeal. For a party to do this, however, the witnesses or documents must have been unknown to the party at the time it filed its notice of appeal. Id. In this case, the Tribe did not establish that its supplementally-disclosed witnesses or documents were unknown to it when it filed its initial notice of appeal.
Further, the Board could have found that one of the Tribe's supplementally-disclosed experts was known to the Tribe at the time of filing the notice of appeal, and consequently no excuse existed for the Tribe's nondisclosure of this witness. According to UPM  and it is unrebutted by the Tribe  the expert witness was known to the Tribe when the Tribe filed its notice of appeal. The expert's identity and the subject matter of his testimony was known to the Tribe because the expert had testified for the Tribe in another case only a few days before the Tribe filed its notice of appeal in this case.
Additionally, we conclude that the Board did not abuse its discretion in not "waiving" application of the A.A.C. R2-1-708 notice of appeal requirements. A.A.C. R2-1-701 gives the hearing officer the authority to "waive application of any of the rules ... upon a finding of good cause and if the waiver is not in conflict with the law and does not adversely affect the substantial interests of any party." As noted by the trial court:
[The Tribe] made no "application" to supplement ... but merely filed a supplement several weeks into the limited preparation period before hearing. [The Tribe's] explanation for [its] inaction was found wanting by the Board for reasons which are not arbitrary or capricious. Indeed, the Board granted the first motion for rehearing and allowed [the Tribe] to proceed on the contents of [its] original notice of appeal. But in doing so, delays ensued which eventually so prejudiced [UPM and ADEQ] that the Board ruled it had lost authority to "waive" even the sixty-day requirement of A.R.S. § 49-323(B). The Board's finding of prejudice is not arbitrary or capricious, in view of the evidence presented on the point by [UPM and ADEQ].

(Emphasis added.) Thus, the rule deprives the Board of authority to grant a waiver when it would "adversely affect the substantial interests of any party." Because the Board found that UPM and ADEQ were prejudiced by the Tribe's actions, the Board lacked the authority to waive the disclosure requirements pursuant to A.A.C. R2-1-701.
C. Did the Board Err in Dismissing the Tribe's Appeal Because the Hearing Did Not Begin Within the Sixty-Day Period Required by A.R.S. Section 49-323(B)?
The Tribe argues that in dismissing the Tribe's appeal on the ground that "the evidentiary hearing in this matter did not begin within the sixty-day time period prescribed by A.R.S. [section] 49-323(B)," the Board erred. Section 49-323(B) states:
The appeals board shall conduct a hearing within sixty days after receiving the notice of appeal and shall render its decision on the appeal within thirty days after the hearing.
The Tribe contends that the Board's interpretation of the term "hearing" in section 49-323(B) as an "evidentiary hearing" is incorrect. The Tribe asserts that the term "hearing" refers to "any proceeding occurring after the Board's jurisdiction is invoked." (Emphasis added.) For the following reasons, we disagree.
First, we observe that sections 49-323(A) and (B) prescribe specific time periods within which an appeal may be initiated, a hearing held, and a decision issued by the Board. Furthermore, appeals from decisions of the Board brought in superior court "have precedence, in every court, over all other civil proceedings." A.R.S. § 49-323(D). Thus, in enacting section 49-323, the legislature clearly intended to provide swift review of ADEQ decisions. This objective is not accomplished by adopting the Tribe's interpretation of this section.
Second, a statute must be read so as to give it a fair and reasonable meaning. Janson *31 v. Christensen, 167 Ariz. 470, 472, 808 P.2d 1222, 1224 (1991). A reasonable construction of the term "hearing" as used in section 49-323(B) is a hearing that will allow the Board the opportunity to review the evidence, hear argument, and then issue its decision within thirty days, as required by section 49-323(B). Accordingly, we conclude that the term "hearing" as used in section 49-323(B) refers to a full evidentiary hearing on the merits of the appeal. See Parker v. Knorr, 383 So.2d 776, 777 (Fla.App. 1980) ("A `hearing' is synonymous with trial, and includes reception of evidence and argument thereon."); Borgia v. Board of Review, Div. of Employment Sec., 21 N.J. Super. 462, 91 A.2d 441, 443 (Ct.App.Div. 1952) ("`The requirement of a "hearing" (before an administrative tribunal) has reference to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts.'").
Third, we accord great weight to an agency's interpretation of statutes and its own regulations. Capitol Castings, Inc. v. Arizona Dept. of Economic Sec., 171 Ariz. 57, 60, 828 P.2d 781, 784 (App. 1992). In this case, the Board interpreted the term "hearing" in section 49-323(B) to require a "full evidentiary hearing," A.A.C. R2-1-721(A); A.A.C. R2-1-702(8), where "all parties shall have the right to present such oral or documentary evidence and to conduct such cross-examination as may be required for a full and true disclosure of the facts," A.A.C. R2-1-722(A).
Here, the Tribe filed its notice of appeal with the Board on June 17, 1991. Thus, pursuant to A.R.S. section 49-323(B), the Board was required to hold a full evidentiary hearing within sixty days, or by August 17, 1991. The Board was unable to comply with the statute because the Tribe failed to substantially comply with the disclosure requirements of the notice of appeal. Accordingly, we conclude that the Board did not err in dismissing the appeal on the ground that the evidentiary hearing could not begin within the sixty-day period required by A.R.S. section 49-323(B).
III. CONCLUSION
In conclusion, we find no error in the trial court's granting of summary judgment against the Tribe on its appeal. Thus, we affirm.
EHRLICH and NOYES, JJ., concur.

SUPPLEMENTAL OPINION
TOCI, Presiding Judge.
We grant the Tribe's motion to reconsider the portion of our opinion addressing the validity of the Board's regulations governing the contents of the notice of appeal, section II.A.2 of our opinion. The Tribe argues that we erred in holding that it did not properly raise the issue on appeal. We agree. We now consider the merits of the Tribe's argument that the Board's regulations governing the contents of a notice of appeal are invalid because the Board failed to adopt them before January 1, 1988, the deadline established by the legislature for adopting such regulations. See Ariz. Rev. Stat. Ann. ("A.R.S.") § 49-322(D). We conclude that the regulations are valid.
Resolution of this issue turns on the distinction between mandatory and directory provisions in statutes. As our supreme court has said:
"A `mandatory' provision in [a] statute is one the omission to follow which renders the proceedings to which it relates void ...."
"Directory" is defined ... as:
"A provision in a statute ... which is a mere direction or instruction of no obligatory force, and involving no invalidating consequence for its disregard ...."
Department of Revenue v. Southern Union Gas Co., 119 Ariz. 512, 513-14, 582 P.2d 158, 159-60 (1978) (citations omitted); see 3 Norman J. Singer, Statutes and Statutory Construction § 57.01 (5th ed. 1992). Thus, a failure to follow a mandatory statutory provision renders the proceedings to which it relates void, while a failure to follow a directory provision does not necessarily invalidate the proceedings.
*32 The basic rule of statutory construction is that the courts must primarily attempt to ascertain and give effect to the intent of the legislature. Hampton v. Glendale Union High Sch. Dist., 172 Ariz. 431, 434, 837 P.2d 1166, 1169 (App. 1992). In arriving at the legislature's intent, the effect and consequences of alternative constructions may be considered. Southern Union, 119 Ariz. at 514, 582 P.2d at 160. "Similarly, language that is mandatory in form may be deemed directory when the legislative purpose can best be carried out by such construction." Hampton, 172 Ariz. at 434, 837 P.2d at 1169.
Section 49-322(D) provides: "Not later than January 1, 1988, the board shall adopt rules of procedure." If we follow the mandatory construction of this section urged by the Tribe, the Board must promulgate its rules of procedure by January 1, 1988. Because the Board did not act until after January 1, 1988, under the Tribe's construction, the rules are invalid. Further, because the January 1, 1988 deadline has passed, the Board can never adopt rules governing the contents of a notice of appeal.
We do not believe, however, that the legislature intended to invalidate rules or regulations adopted by the Board after January 1, 1988. Under the alternative, directory construction of A.R.S. section 49-322(D), the Board should promulgate its rules of procedure by January 1, 1988; the Board's failure to act by this date is not fatal and will not invalidate the rules ultimately adopted. Thus, a directory construction allows the Board to adopt rules governing the contents of the notice of appeal after the January 1, 1988 legislative target date. This result best carries out the express legislative purpose of allowing appeals to the Board. See A.R.S. § 49-323 (1988).
Furthermore, the use of the word "shall" does not automatically render the statute mandatory; it may indicate desirability, preference, or permission. Arizona Downs v. Arizona Horsemen's Found., 130 Ariz. 550, 554, 637 P.2d 1053, 1057 (1981). As a general rule, if a statute "states the time for performance of an official duty, without any language denying performance after a specified time, it is directory." Hightower v. Duffy, 192 Ill. App.3d 65, 139 Ill.Dec. 110, 118, 548 N.E.2d 495, 503 (1989); see Singer, supra, § 57.19. A.R.S. section 49-322(D) requires that the Board adopt rules of procedure "[n]ot later than January 1, 1988." The statute does not, however, expressly prohibit the Board from adopting rules after that date. Thus, we find that A.R.S. section 49-322(D) is directory. Accordingly, the Board's rules governing the contents of the notice of appeal are valid and enforceable.
EHRLICH and NOYES, JJ., concur.
NOTES
[1] A.R.S. § 49-323(C) states: "An appeal under this section shall be considered a contested case and shall be subject to the notice, hearing and other procedures applicable to contested cases under title 41, chapter 6." (Footnote omitted.)
[2] A.R.S. § 49-322(D) states: "Not later than January 1, 1988, the board shall adopt rules of procedure to govern the conduct of hearings before the board."
[3] The legislature has expressly provided that some notices of appeal contain specified information regarding the dispute. See, e.g., A.R.S. § 9-462.06(D) (1990) ("Appeals to the board ... may be taken ... by filing ... a notice of appeal specifying the grounds thereof.") (emphasis added); A.R.S. § 23-672(F) (Supp. 1993) ("A party dissatisfied ... may file a request for review ... which shall be a written request and memorandum stating the reasons why the appeals board's decision is in error and containing appropriate citations of the record, rules and other authority.") (emphasis added).
[4] U.S. Const. amend. XIV, § 1; Ariz. Const. art. II, § 13.
[5] U.S. Const. amend. XIV, § 1; Ariz. Const. art. II, § 4.