671 P.2d 931

Edwin E. PEACE, Plaintiff/Appellant,

v.

ALLSTATE INSURANCE COMPANY, Defendant/Appellee.

No. 2 CA–CIV 4679.

Court of Appeals of Arizona, Division 2.

Sept. 23, 1983.

Kimble, Gothreau, Ryan, Nelson & Cannon, P.C. by William Kimble, Tucson, for plaintiff/appellant.

Slutes, Browning, Sakrison & Grant, P.C. by Mark R. Riegel, Tucson, for defendant/appellee.

OPINION

BIRDSALL, Judge.

The only question in this appeal is whether a Ford Bronco was available or furnished by Tucson Electric Power Company (TEP)

for the regular use of its employee, appellant Edwin E. Peace, and therefore excluded from coverage under the Allstate policy issued to him.[1] In the trial court, summary judgment was awarded to Allstate. The trial court declared that Allstate provided no insurance coverage under the undisputed facts presented. We agree.

The facts, considered most strongly in favor of the appellant, show that on February 15, 1980, the plaintiff, Edwin Peace and Robert McCullough were both employed as engineers with TEP. Peace was with the transmission department—one of 12 engineers assigned either to that department or to the civil structural department. Peace, McCullough and three other TEP engineers were driving along a power line right-of-way north of Tucson when the vehicle, driven by Peace, went into a wash. As a result, McCullough was thrown forward into the windshield of the vehicle and sustained injuries.

The vehicle was a Ford Bronco, owned by TEP, and was one of the two assigned to the transmission department. It was also available to the engineers working in the civil structural department, and occasionally to personnel of the land department.

In order to use of the two vehicles assigned to the department, it was necessary for the engineers to go to the manager of the department each time an automobile was needed and ask for a vehicle. If a vehicle was available, he would be given the keys. Peace had no priority as to the use of any vehicle and he stood on equal footing with the other 11 engineers.

When neither of the two vehicles was available, Peace or the other engineers would obtain a vehicle from the TEP company pool, and if none of those were available and there was a real need, they could use their own cars. Peace normally used the Bronco three days a week and the other car the other three working days. On the day of the accident, five persons were in the vehicle—all TEP employees. It was simply

---

1. A second question presented as a cross-issue will not be considered because of our disposition of this issue.

a matter of chance that Peace was driving. In his deposition, the appellant said, "Larry Wilhelm (the manager) took the keys out of his desk, all five of us met outside the building, walked toward the truck, and he tossed them to me and said, 'Here, you drive.'"

At the time of the accident, Peace was the named insured on a motor vehicle liability policy issued by Allstate, which, along with other coverage, insured him while he was driving non-owned autos. A "non-owned auto" was defined in that policy as an auto not available or furnished "for the regular use of a person insured." McCullough filed a lawsuit for the personal injuries he sustained. Subsequently, this declaratory judgment action was filed seeking to have the court declare that appellee, Allstate, should defend the McCullough suit and provide coverage for Peace.

In *Keplinger v. Mid-Century Insurance Co.*, 115 Ariz. 387, 565 P.2d 893 (App.1977), our court said:

"We need not, however, discuss the applicability of the 'regular use' exception as to which, a reading of the full cases discloses, no hard and fast rule has been established and each case depends upon the particular facts. See Annot. 86 A.L.R.2d 937, § 6." 115 Ariz. at 390, 565 P.2d 893.

We must now not only discuss but we must decide the applicability of the "regular use" exception under the facts of this case.

The appellant argues that although the use of the Ford Bronco by Peace was "frequent" as defined in *Keplinger*, it was not "regular." The policy in *Keplinger* excluded from non-owned automobile coverage "an automobile not" *regularly or frequently* used by the named insured. Since the *Keplinger* court found the auto involved there to be frequently used, it did not have to consider the alternative. Frequent use was defined in *Keplinger* as including "an often-repeated but irregular, casual, or incidental use as distinguished from a regular use." 115 Ariz. at 390, 565 P.2d 893. Despite that definition, a use can be both frequent and regular. The fact that a use is frequent

does not preclude it from being regular. See Annot., 86 A.L.R.2d 937 (1962), particularly § 7 at 956, "Insured's use of vehicle furnished by employer."

Several cases from other jurisdictions contain fact situations involving an employee's use of an employer's auto on a frequent basis which is also held to be regular and within the exclusion. For example, in *Aetna Casualty and Surety Company v. Sessions*, 260 S.C. 150, 194 S.E.2d 877 (1973), a pickup truck belonging to the employer was used solely in the employer's business each day by the employee. It was held the vehicle was furnished for the regular use of the employee and did not meet the definition of non-owned automobile contained in the employee's personal automobile liability insurance policy. In *Davy v. Merchants Mutual Casualty Company*, 97 N.H. 236, 85 A.2d 388 (1952), it was held the "regular use" clause excluded coverage for a taxi driver, employed full-time in such position, and one of three persons who operated two cars in the taxi business of the employer. Although the driver was not limited to the use of either vehicle, and did not operate the one involved in the accident any more than the other, nevertheless either vehicle was used for the regular use to the insured within the meaning of the exclusion. And, in *Home Insurance Co. v. Kennedy*, 52 Del. 42, 152 A.2d 115, 86 A.L.R.2d 956 (1959), the court rejected the contention, made by the plaintiff here, that "furnished for regular use" meant that the insured was entitled to an indiscriminate and unrestricted, full and complete use of the truck, and that since the employer restricted use of the truck to a business use, it was therefore not furnished for regular use." The court found that the daily use of the vehicle in question showed "regular use" within the common meaning of the term. *Farm Bureau Mutual Automobile Insurance Company v. Marr*, 128 F.Supp. 67, 86 A.L.R.2d at 957 (D.C.N.J. 1955); *Bringle v. Economy Fire & Casualty Company*, 169 N.W.2d 879 (Iowa 1969); *Whaley v. Great American Insurance Company*, 259 N.C. 545, 131 S.E.2d 491 (1963); *Milwaukee Insurance Company v. Morrill*,

100 N.H. 239, 123 A.2d 163 (1956); *Economy Fire & Casualty Co. v. Gorman,* 84 Ill. App.3d 1127, 40 Ill.Dec. 468, 406 N.E.2d 169 (1980), and *International Service Insurance Company v. Walther,* 463 S.W.2d 774 (Tex. Civ.App.1971). We are persuaded by these cases which clearly represent a majority view.

We believe the appellee's position and the trial court's ruling correct despite the definition of the term "regular use" in *Travelers Indemnity Company v. Hudson,* 15 Ariz. App. 371, 488 P.2d 1008 (1971). In *Travelers,* the policy excluded coverage under a provision defining a non-owned automobile as one *not* "furnished for the regular use of either the named insured or any relative." No employer-employee relationship was involved in *Travelers.* The insured had "loaned" his car to a friend for the weekend. The friend had left his car in its place. When the borrowed vehicle was not returned, the insured used the other vehicle, this use resulting in a fatal accident. The trial court jury found there was permission to use the vehicle. Travelers then argued if there was permission under those facts, the vehicle was furnished the insured for his "regular use." Therefore it contended the exclusion came into play and there was no coverage. It was in the light of those facts that Division One of our court held that the jury was not required to find that use was regular.

■ The opinion contains the following pronouncement concerning the meaning of "regular use":

"The phrase 'regular use' is undefined in the policy. However, the term denotes continuous use; uninterrupted normal use for all purposes; without limitation as to use; and customary use as opposed to occasional use or special use." 15 Ariz. App. at 375, 488 P.2d 1008.

We are troubled with that definition. We do not believe a regular use has to be "continuous" or even defined in terms of continuity. Likewise, we disagree that "regular use" must be "uninterrupted" or "for all purposes" or "without limitation."

■ The Division One court cites *Eureka-Security Fire & Marine Ins. Co. v. Simon,* 1 Ariz.App. 274, 401 P.2d 759 (1965), as authority for its regular use definition. That opinion involves a business interruption policy, a rider to that policy, and the time within which a claim had to be pursued. Nowhere does the case discuss "regular use" of a non-owned auto. The only other authority relied on in the *Travelers* opinion is *Safeco Insurance Company of America v. Thomas,* 244 Cal.App.2d 204, 52 Cal.Rptr. 910 (1966), which involved a personal pleasure trip by the insured in a government car furnished him as an agent of the IRS. The policy contained a provision excluding coverage for a non-owned vehicle not only if it was one furnished for the regular use of the named insured, but also if the actual use was not within the scope of the permission to use. For the latter reason, the accident, which occurred when the named insured was on a frolic of his own, was not covered. However, the California court does discuss the term "regular use," quoting from *Pacific Automobile Ins. Co. v. Lewis,* 56 Cal. App.2d 597, 132 P.2d 846 (1943):

"... *'regular use' reasonably suggests a principal use as distinguished from a casual or incidental use....* Whether an automobile is furnished by another to an insured for his regular use may reasonably depend upon the time, place and purpose for which it is to be used. One furnished for all purposes and at all times and places would clearly be for his regular use. *One furnished at all times but strictly for business purposes alone could hardly be said to have been furnished for his regular use at a time and place when it was being used for personal purposes.'* " (Emphasis in original) 52 Cal.Rptr. at 912.

The *Safeco* opinion does not contain the language set forth in *Travelers.* Whether a use for an unauthorized purpose takes the use out of the "regular use" definition as in *Safeco,* we need not decide since the appellant's use of the car was for business purposes only.

We have also considered the later Division One opinion, *Coombs v. Lumbermen's*

494

*Mutual Casualty Company,* 23 Ariz.App. 207, 531 P.2d 1145 (1975), which incidentally does not cite *Travelers.* We find nothing in that authority or the cases relied on which are inconsistent with our opinion in the instant appeal.

Since the language in insurance policies is to be given their normal meaning, we find support in Webster's Third International Abridged Dictionary: "Regular: Steady or uniform in course, practice or occurrence; returning, recurring or received at stated, fixed or uniform intervals."

We agree that the trial court properly concluded that the company vehicle was available or furnished for the regular use of Peace.

Affirmed.

HOWARD, C.J., and HATHAWAY, J., concur.