48 P.3d 499

**LAKE HAVASU CITY, a political subdivision of the State of Arizona, Lake Havasu Parks & Recreation, dba Camp Little Foot, Plaintiffs–Appellants,**

v.

**ARIZONA DEPARTMENT OF HEALTH SERVICES, and Catherine R. Eden, in her official capacity as Director of the Arizona Department of Health Services, Defendants–Appellees.**

No. 1 CA–CV 01–0545.

Court of Appeals of Arizona, Division 1, Department C.

June 25, 2002.

**550**

Maureen George, Office of the City Attorney, Lake Havasu, Attorney for Plaintiffs–Appellants.

Janet Napolitano, Attorney General By Lynne C. Adams and Timothy C. Miller, Assistant Attorneys General, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

EHRLICH, Judge.

¶1 Lake Havasu City appeals a judgment affirming an administrative order to cease and desist the operation of child-care pro-

grams without obtaining the requisite licenses from the Arizona Department of Health Services ("DHS"). Because a municipal corporation is not exempt from the licensing requirements governing the operation of such programs, we affirm.

## BACKGROUND

¶ 2 In response to complaints, DHS investigated whether Lake Havasu was operating its Tiny Tots and Camp Little Foot programs without obtaining a child-care facility license. On July 6, 1995, DHS ordered Lake Havasu to cease and desist these unlicensed activities.

¶ 3 Lake Havasu appealed the cease-and-desist order to an administrative hearing officer, who recommended on January 26, 1996, that DHS vacate the order. More than four years later, on September 5, 2000, the director of DHS issued a final decision rejecting the recommendation and affirming the order. After DHS denied Lake Havasu's request for review and rehearing, Lake Havasu filed a complaint for special action in which it raised the statute of limitations and certain equitable defenses, and denied that its facilities were subject to the licensing requirement. The superior court denied special-action relief and affirmed the administrative order. Lake Havasu then appealed to this court.

## DISCUSSION

### A. The Statute of Limitations, Laches and Equitable Estoppel

¶ 4 When reviewing a superior-court judgment regarding administrative action, we determine whether the record contains substantial evidence to support the decision. *Sundown Imps., Inc. v. Dep't of Transp.,* 115 Ariz. 428, 431, 565 P.2d 1289, 1292 (App.1977). We independently resolve issues of law, however. *Sunpower of Ariz. v. Ariz. State Registrar of Contractors,* 166 Ariz. 437, 439, 803 P.2d 430, 432 (App.1990) (citations omitted).

¶ 5 Arizona Administrative Code ("A.A.C.") Regulation ("R") 9–1–119 provides in relevant part:

Within 30 days after either receipt of any recommended decision from the hearing officer or the final day for filing a memorandum of comments or exceptions to the recommended decision, together with any sufficient, timely exceptions filed, the Director [of DHS] shall issue a decision as provided in [Arizona Revised Statutes] § 36–112(C).

¶ 6 Relying upon this provision, Lake Havasu argues that the DHS decision is void because the director of DHS did not issue her decision within thirty days. Although the director indeed failed without excuse to meet the deadline by more than four years, we affirm the order because the standard is directory, not mandatory, and Lake Havasu suffered no prejudice from the delay.

¶ 7 Although A.A.C. R9–1–119 tells the director to issue the decision within thirty days using the word "shall," depending on the context, "shall" may be precatory. *See Ariz. Downs v. Ariz. Horsemen's Found.,* 130 Ariz. 550, 554, 637 P.2d 1053, 1057 (1981). Indeed, as a general rule, if a statute "states the time for performance of an official duty, without any language denying performance after a specified time, it is directory." *Watahomigie v. Ariz. Bd. of Water Quality Appeals,* 181 Ariz. 20, 32, 887 P.2d 550, 562 (App.1994)(quoting *Hightower v. Duffy,* 192 Ill.App.3d 65, 139 Ill.Dec. 110, 548 N.E.2d 495, 503 (1989)); *cf. Ariz. Libertarian Party v. Schmerl,* 200 Ariz. 486, 500 ¶ 10, 28 P.3d 948, 952 (App.2001)(" 'Shall' may be interpreted as indicating desirability, preference, or permission, rather than mandatory direction if the context and purpose of the legislation indicate that the term should be so construed."); *HCZ Const., Inc. v. First Franklin Financial Corp.,* 199 Ariz. 361, 364 ¶ 9, 10 P.3d 155, 158 (App.2001)("Shall" "may be deemed directory when the legislative purpose can best be carried out by such construction.").

¶ 8 For example, in *Traylor v. Thorneycroft,* this court construed a regulation stating that, upon request, a licensee "shall" be afforded a hearing as soon as practical within thirty days from the receipt of the request by the Arizona Department of Transportation. 134 Ariz. 482, 483, 657 P.2d 895, 896

(App.1982)(citing Arizona Revised Statutes ("A.R.S.") 28–446(B)). We held that the language was directory because a mandatory construction would "undermine rather than further" the authority of the Department to license drivers. *Id.* at 484, 657 P.2d at 897; *accord Brousseau v. Fitzgerald,* 138 Ariz. 453, 456, 675 P.2d 713, 716 (1984)("ten day requirement for action by the superior court is directory and not mandatory"); *Forino v. Ariz. Dep't of Transp.,* 191 Ariz. 77, 81, 952 P.2d 315, 319 (App.1997)(failure to conduct hearing within statutory time did not divest agency of jurisdiction).[1]

¶ 9 Having no reason to depart from the application of the general rule in this case, we similarly conclude that the language of A.A.C. R9–1–119 is directory, not mandatory. The regulation addresses the time for performance of an official duty, but it does not deny performance after a specific time or dictate the consequence of a failure to comply.[2]

■■■ ¶ 10 Lake Havasu argues that enforcing A.A.C. R9–1–119 would be inequitable, but we agree with the United States Supreme Court that there is and must be a strong public policy against allowing the mistakes of an agency or employee to limit the government's ability to enforce its laws. *Brock v. Pierce County,* 476 U.S. 253, 262, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986)(Secretary of Labor did not lose power to recover misused Comprehensive Employment and Training Act funds following expiration of period for determining truth of allegations of wrongdoing). Based upon that policy, a United States Court of Appeals allowed the

National Labor Relations Board to proceed with an enforcement action notwithstanding a six-year delay in *N.L.R.B. v. Hanna Boys Ctr.,* 940 F.2d 1295, 1299 (9th Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992).

¶ 11 DHS seeks to implement laws requiring non-exempt child-care programs to have a license. To prevent DHS from enforcing this requirement would frustrate the public policy of protecting Arizona's children, endanger the children enrolled in the program and cause undue concern for those who have entrusted the children to the program. These considerations outweigh the need to punish executive delay in the absence of countervailing prejudice.

■■■ ¶ 12 Although Lake Havasu has operated its Tiny Tots and Camp Little Foot programs without disturbance from DHS since the administrative decision to cease and desist unlicensed operation, Lake Havasu asserts that the delay has caused prejudice. That delay and alleged prejudice provide the underpinning for Lake Havasu's laches and estoppel claims, *see Decker v. Hendricks,* 97 Ariz. 36, 39, 396 P.2d 609, 611 (1964)(laches requires proof of injury because of another party's lack of diligence); *Freightways, Inc. v. Ariz. Corp. Comm'n,* 129 Ariz. 245, 247, 630 P.2d 541, 543 (1981)(equitable estoppel requires proof of reliance upon another's conduct to one's detriment), but we do not find that the delay prejudiced Lake Havasu thus conclude that its arguments are without merit.

---

1. The courts of other jurisdictions agree. *Accord Meyers v. Maul,* 249 A.D.2d 796, 671 N.Y.S.2d 848, 849 (1998)(failure of state agency to issue determination within thirty days of hearing as required by statute did not divest agency of jurisdiction because statute was directory; to be mandatory, statute must contain "an express limitation upon the power of a particular agency to act after the expiration of the relevant statutory period"); *Outdoor Resorts/Palm Springs Owners' Ass'n v. Alcoholic Beverage Control Appeals Bd.,* 224 Cal.App.3d 696, 273 Cal.Rptr. 748, 751 (1990)(thirty-day limitation directory, and statutes or rules establishing time within which decision must be rendered directory "unless a consequence or penalty is provided for failure to do the act within the time commanded"); *see gener-*

*ally Village of Mundelein v. Hartnett,* 117 Ill. App.3d 1011, 73 Ill.Dec. 285, 454 N.E.2d 29, 33 (1983)(if statute mandatory, it prescribes result that will follow if required acts not done; if statute directory, then terms limited to what required to be done).

2. Lake Havasu cites authorities construing "shall" as mandatory, but only in one case did the court examine its use in a similar statute or rule. *Phoenix Newspapers, Inc. v. Superior Ct.,* 180 Ariz. 159, 161, 882 P.2d 1285, 1287 (App. 1993). That case, however, is distinguishable because it involved a provision specifying the consequence of failing to comply with the ten-day time limit for executing a search warrant.

¶ 13 Lake Havasu contends that it would have expanded its children's programs but for the administrative hearing officer's recommendation. Nonetheless, during the period between the recommendation and the administrative decision, as the trial court found, Lake Havasu "continued to run the Tiny Tots and Camp Little Foot programs with no apparent adverse effect from the Director's failure to timely issue her decision." Indeed, the failure of DHS to issue its final decision in a timely manner could only have redounded to Lake Havasu's benefit because the decision was more restrictive than the recommendation. Although Lake Havasu might have operated fewer programs than it would have sponsored absent the complaints, it actually operated more programs than it would have organized if DHS had issued its decision earlier. Because Lake Havasu cannot demonstrate any prejudice from the delay, the decision of DHS is not barred by laches or equitable estoppel.

### B. Lake Havasu's Programs Occur at Child–Care Facilities

¶ 14 Lake Havasu claims that it is not a "person" providing "child care" at a "child care facility" for purposes of A.R.S. §§ 36–881(2), (3) and (7) and 36–882(A)(Supp.2001).[3] We disagree.[4]

¶ 15 According to A.R.S. § 36–881(7), a "person" is "an individual, partnership, corporation . . . or child care center

that operates a child care facility." Lake Havasu argues that a municipal corporation is not included in the statute. We have previously held, though, that the word "corporation" includes all types of corporations—private, public and municipal, see Shaffer v. Allt, 25 Ariz.App. 565, 571–72, 545 P.2d 76, 82–83 (1976), and there is no public-policy justification for distinguishing between a municipal corporation and any other corporation engaged in similar programs. When "[g]iven a free hand to operate where any person, firm, or corporation may, consistency as well as public policy ought to impose upon municipalities the same duties and obligations as are imposed upon persons, firms, or corporations." Sumid v. City of Prescott, 27 Ariz. 111, 116, 230 P. 1103, 1105 (1924). There is no reason to exempt Lake Havasu from the health and safety requirements of a license.

¶ 16 Equally unavailing is Lake Havasu's contention that its Tiny Tots and Camp Little Foot programs did not afford participating children "care," "supervision" and "guidance" as meant in A.R.S. § 36–881(2). Because the statute fails to define these terms, common dictionary definitions are appropriately considered. See Airport Props. v. Maricopa County, 195 Ariz. 89, 99 ¶ 35, 985 P.2d 574, 584 (App.1999). Such sources define "care" with words and phrases such as "close attention," "watchfulness" and "heed;" "guidance" as "direction" and "leadership," and "supervision" as "direction,"

---

**3.** Section 36–881, A.R.S., provides in relevant part:

In this article, unless the context otherwise requires:

\* \* \*

(2) "Child care" means the care, supervision and guidance of a child or children, unaccompanied by a parent, guardian or custodian, on a regular basis, for periods of less than twenty-four hours per day, in a place other than the child's or the children's own home or homes. (3) "Child care facility" means any facility in which child care is regularly provided for compensation for five or more children not related to the proprietor.

\* \* \*

(7) "Person" means an individual, partnership, corporation, limited liability company, association, day nursery, nursery school, day camp, kindergarten, child care agency, school governing board, charter school or child care center that operates a child care facility.

According to A.R.S. § 36–882(A), a child-care facility "shall not receive any child for care, supervision or training unless the facility is licensed by the department of health services."

**4.** In its Opening Brief, Lake Havasu summarily states that it is not a day-care facility for purposes of the statute, addressing only its contention that it is not a person. Instead, it incorporates the remaining arguments by reference to superior-court documents. This reference does not satisfy the requirement that an opening brief contain "the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." ARIZ. R. CIV.APP. P. 13(a)(6). Nor does appending the cited parts of the record to its Reply Brief cure the problem with the Opening Brief. Given the importance of the issue, despite this inadequate presentation, we proceed to discuss these issues.

"management" and "oversight." *See* WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY (2d ed.1983); THE COMPACT EDITION OF THE OXFORD ENGLISH DICTIONARY (1971).

¶ 17 Lake Havasu does not dispute that its employees supervised and cared for the children enrolled in its programs. Rather, it insists that the programs do not qualify as child care because the children sing, play and paint. This argument is without merit. The nature of the children's activities does not change the fact that the counselors were caring for, guiding and supervising the children within the meaning of the statute. Similarly, the contention that those entrusting their children to these caretakers in the Tiny Tots and Camp Little Foot programs did not view the programs as "day care," if true, does not change the reality that Lake Havasu provided "care, guidance, and supervision" according to the meaning of the statute.

¶ 18 We also reject Lake Havasu's contention that its programs did not provide care on a "regular basis" as meant by A.R.S. § 36–881(2). Conceding that the programs were offered for five weeks during the same hours on a recurring basis according to a pre-established schedule, Lake Havasu nevertheless argues that they are subject to interruption and not continuous. According to it, these characteristics remove its programs from the statutory definition.

¶ 19 This court rebuffed a similar argument in *Peace v. Allstate Insurance Co.*, 137 Ariz. 490, 492, 671 P.2d 931, 933 (App.1983), in which it construed a provision in a car-insurance policy covering an employee who drove a "non-owned auto," i.e., one "not available or furnished 'for the regular use of a person insured.' " We said that "a regular use" does not have to be " 'continuous' or even defined in terms of continuity. Likewise," it need not "be 'uninterrupted' or 'for all purposes' or 'without limitation.' " *Id.* at 493, 671 P.2d at 934; *accord Union Mut. Ins. Co. v. Brown*, 809 S.W.2d 144, 146 (Mo.Ct.App.1991)("regularly" not synonymous with "constantly" or "continuously" in the context of home day-care services; appropriate definition is "steady or uniform in course, practice, or occurrence; not subject to unexplained or irrational variations").

¶ 20 We also cannot agree with Lake Havasu that it did not receive "compensation" for purposes of A.R.S. § 36–881(3). While admitting that it collected fees ranging from $50 to $70 per child, it contends that the charges fail to qualify as "compensation" because they were related to the programs' costs. Nothing in the statutes or regulations indicates, however, that "compensation" presumes that the programs make a profit. Indeed, A.A.C. R9–5–101(25) defines compensation as "payment of money or other consideration, including goods, services, vouchers, time or other benefit ... for child care services." Moreover, "compensation" is commonly defined as a "payment" and "remuneration" and not in the context of a profit or break-even point. *See* WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY; THE COMPACT EDITION OF THE OXFORD ENGLISH DICTIONARY. The Tiny Tots and Camp Little Foot programs operated for compensation.

¶ 21 Finally, Lake Havasu was not otherwise exempt through providing "training only in specific subjects, including dancing, drama, music, self-defense or religion." A.R.S. § 36–884(5)(Supp.2001). According to a 1992 advertisement, Camp Little Foot:

> is a structured program designed to develop social, listening and learning skills. Children will participate in singing, music, sharing, arts and crafts, movies, story time and games designed to develop coordination and interaction with other children their own age.

Similarly, a Tiny Tots program announcement from 1990 states:

> Tiny Tots is a structured preschool class designed to develop social, listening and learning skills. Children will participate in singing, music skills, sharing and arts and crafts activities. Various topics to be covered are colors, numbers, alphabet, home address, phone number, health concepts and seasonal items.

Thus, unlike, for example, an individual after-school or weekend ballet or piano class, Lake Havasu's programs are not exempt from licensure because they included a "range of

subjects" and were "not limited to one specific subject." The programs are ones with varied activities for children of differing ages and multiple interests.

#### C. Lake Havasu's Requests for Costs and Attorneys' Fees

¶ 22 Lake Havasu has requested its appellate costs and attorneys' fees. Its request is denied.

### CONCLUSION

¶ 23 The judgment is affirmed.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge and JEFFERSON L. LANKFORD, Judge.