IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| DENNIS WAY, | ) | 2 CA-CV 2002-0131 |
| | ) | DEPARTMENT B |
| Plaintiff/Appellant/Cross-Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| STATE OF ARIZONA, a body politic; | ) | |
| ARIZONA DEPARTMENT OF | ) | |
| TRANSPORTATION, an agency of the | ) | |
| STATE OF ARIZONA, | ) | |
| | ) | |
| Defendants/Appellees/Cross-Appellants. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20015270

Honorable Ted B. Borek, Judge

AFFIRMED IN PART; VACATED IN PART

Monroe & Associates, P.C.
  By Karl MacOmber
                                                    Tucson
                              Attorneys for Plaintiff/Appellant/
                                              Cross-Appellee


Terry Goddard, Arizona Attorney General
  By Peter C. Gulatto
                                                    Phoenix
                            Attorneys for Defendants/Appellees/
                                              Cross-Appellants

P E L A N D E R, Presiding Judge.

¶1　　　　Appellant Dennis Way appeals from the Pima County Superior Court's order that modified but otherwise affirmed an administrative law judge's (ALJ) order suspending Way's driver's license pursuant to A.R.S. § 28-1321, Arizona's implied consent statute. We affirm that part of the superior court's order upholding the ALJ's one-year suspension of Way's driver's license, but vacate the superior court's starting date of July 13, 2001, and reinstate the ALJ's starting date of August 28, 2001.

## BACKGROUND

¶2　　　　Although the facts are largely undisputed, we view them in the light most favorable to sustaining the ALJ's decision. *See Tornabene v. Bonine ex rel. Arizona Highway Dep't*, 203 Ariz. 326, ¶2, 54 P.3d 355, ¶2 (App. 2002). On July 13, 2001, a police officer stopped Way's car and, after taking his driver's license and conducting a preliminary investigation, arrested him for driving under the influence of intoxicants (DUI). After transporting Way to a police substation, an officer read to him admonitions from an "Admin Per Se/Implied Consent Affidavit" form (the form). The admonitions essentially informed Way that Arizona law required him to successfully perform tests of the officer's choice to determine the amount of alcohol or drugs in his body; that failure of the tests would result in the suspension of his driver's license for at least ninety days; and that refusal to submit to the tests would result in the suspension of his driver's license for at least one year. Way refused to take a breath test, stating that such a test was "an invasion."

¶3　　　　Despite Way's refusal, police did not issue him a copy of the form on the night of his arrest. That form includes and serves as an order of suspension that notifies a DUI arrestee of the impending license suspension and of his or her right to request a hearing to contest the

propriety of that suspension. The form also serves as a temporary driver's permit. The arresting officer eventually served Way with a copy of the form six weeks later, on August 28, 2001.

¶4 Way then requested a hearing pursuant to § 28-1321(K) to contest the propriety of his license suspension. At the hearing, Way did not testify but argued that § 28-1321(D)(2)(b) required police to issue the form to him when he was arrested and his license was taken. The officer's failure to do so, Way further argued, divested the Department of Transportation (DOT) of jurisdiction and voided its suspension of his driver's license. The ALJ rejected those arguments and affirmed the August 28 order of suspension, stating that the requirements of § 28-1321(D)(2)(b) "were eventually complied with, albeit belatedly." The ALJ further found that, "[a]lthough Mr. Way had surrendered his license on July 13th, technically his driving privileges were not suspended at that point. He could have obtained a duplicate license through the [DOT] and lawfully driven."

¶5 On review pursuant to § 28-1321(M), the superior court agreed with the ALJ that the officer's failure to serve the order of suspension on Way the night of his arrest did not divest DOT of jurisdiction to suspend Way's driver's license. But the court adjusted the termination date for the suspension, reasoning as follows:

> [C]onsidering [§ 28-1321] as a whole, its purpose is best served by considering the language [of § 28-1321(D)(2)(b)] as directory. As the statute provides for the suspension to be effective fifteen days after 1) service of the order of suspension and 2) surrender of a license, this Court concludes that failure to provide immediately notice of suspension limits the allowable suspension to account for the period [Way] had surrendered his license and was without a temporary permit. Thus, this Court concludes that the ALJ properly imposed a suspension, except as a matter of law the suspension must be adjusted to account for the 46-day delay (July 13, 2001, to August 28, 2001) in providing notice of the suspension to [Way], the period [Way] was without a temporary permit.

3

¶6　　　　　Way appeals from the superior court's ruling, again arguing that DOT lacked jurisdiction to suspend his license.[1] Way alternatively contends that the ALJ essentially suspended his license for more than one year, which DOT may not do, and that the superior court lacked authority to modify that ruling. The state cross-appeals, urging us to reinstate the ALJ's order because the superior court erred in concluding that suspension of Way's license began on the date he surrendered his driver's license to police.

**DISCUSSION**

### A.　Interpretation of § 28-1321

¶7　　　　　"When reviewing an ALJ's decision under the implied consent law, the superior court is limited to determining whether the ALJ's decision was 'arbitrary, capricious, or an abuse of discretion.'" *Caretto v. Arizona Dep't of Transp.*, 192 Ariz. 297, ¶7, 965 P.2d 31, ¶7 (App. 1998), *quoting Edwards v. Arizona Dep't of Transp./Motor Vehicle Div.*, 176 Ariz. 137, 140, 859 P.2d 760, 763 (App. 1993). "In turn, we review the superior court's decision 'to determine whether the record contains evidence to support the judgment.'" *Caretto*, 192 Ariz. 297, ¶7, 965 P.2d 31, ¶7, *quoting Havasu Heights Ranch & Dev. Corp. v. Desert Valley Wood Prods., Inc.*, 167 Ariz. 383, 386, 807 P.2d 1119, 1122 (App. 1990). In cases such as this that involve statutory interpretation, however, we are not bound by the conclusions of the ALJ or the superior court but,

---

[1]Way does not challenge the ALJ's findings that police had reasonable grounds to believe that he had been driving while under the influence of intoxicating liquor or drugs; that police had arrested him for DUI and requested that he submit to a breathalyzer test; that he had refused to submit to that test; and that he had understood the consequences of his refusal to submit to breath testing. *See* A.R.S. § 28-1321(K).

4

rather, our review is de novo. *See Tornabene*, 203 Ariz. 326, ¶12, 54 P.3d 355, ¶12; *Forino v. Arizona Dep't of Transp.*, 191 Ariz. 77, 79, 952 P.2d 315, 317 (App. 1997).

¶8        Section 28-1321(A), A.R.S., provides that any person operating a motor vehicle in this state and arrested for DUI impliedly consents "to a test or tests of the person's blood, breath, urine or other bodily substance for the purpose of determining alcohol concentration or drug content." Subsections (D) and (F) of the statute provide, in pertinent part:

> D.    If a person under arrest refuses to submit to the test designated by the law enforcement agency as provided in subsection A of this section:
>
> . . . .
>
> 2.    The law enforcement officer directing the administration of the test shall:
>
> (a) File a certified report of the refusal with the department.
>
> (b) On behalf of the department, serve an order of suspension on the person that is effective fifteen days after the date the order is served.
>
> (c) Require the immediate surrender of any license or permit to drive that is issued by this state and that is in the possession or control of the person.
>
> . . . .
>
> (e) If a valid license or permit is surrendered, issue a temporary driving permit that is valid for fifteen days.
>
> (f) Forward the certified report of refusal, a copy of the completed notice of suspension, a copy of any completed temporary permit and any driver license or permit taken into possession under this section to the department within five days after the issuance of the notice of suspension.

5

. . . .

F. On receipt of the certified report of refusal and a copy of the order of suspension and on the effective date stated on the order, the department shall enter the order of suspension on its records unless a written request for a hearing as provided in this section has been filed by the accused person. If the department receives only the certified report of refusal, the department shall notify the person named in the report in writing sent by mail that:

1. Fifteen days after the date of issuance of the notice the department will suspend the person's license or permit, driving privilege or nonresident driving privilege.

2. The department will provide an opportunity for a hearing if the person requests a hearing in writing and the request is received by the department within fifteen days after the notice is sent.

¶9 As he did below, Way argues that § 28-1321(D)(2)(b) requires a police officer to serve the order of suspension contemporaneously with a DUI arrestee's surrender of his or her driver's license; that this requirement is mandatory; and that, therefore, an officer's failure to comply with that requirement renders void all subsequent proceedings to suspend the license. Way is correct that if a statutory provision is deemed mandatory, failure to follow it renders all subsequent proceedings relating to that provision illegal and void. *See Department of Revenue v. Southern Union Gas Co.*, 119 Ariz. 512, 513-14, 582 P.2d 158, 159-60 (1978); *Forino*, 191 Ariz. at 80, 952 P.2d at 318. Conversely, if a statutory provision is interpreted as merely directory, "the failure to follow it has no invalidating consequence." *Forino*, 191 Ariz. at 80, 952 P.2d at 318; *see also Department of Revenue*.

¶10 Section 28-1321(D)(2)(b) states that an officer "shall . . . serve an order of suspension" on a DUI arrestee who refuses to submit to a designated test. But "use of the word

6

'shall' does not automatically render a statute mandatory." *Forino*, 191 Ariz. at 81, 952 P.2d at 319. "Our primary goal in interpreting statutes is to discern and give effect to legislative intent." *Hobson v. Mid-Century Ins. Co.*, 199 Ariz. 525, ¶8, 19 P.3d 1241, ¶8 (App. 2001). "To discern the legislature's intent, we may consider the effect and consequences of alternative construction." *Forino*, 191 Ariz. at 80, 952 P.2d at 318. "Language that is mandatory in form may be deemed directory when such construction best serves the legislative purpose." *Id.*; *see also HCZ Constr., Inc. v. First Franklin Financial Corp.*, 199 Ariz. 361, ¶11, 18 P.3d 155, ¶11 (App. 2001).[2]

¶11        We find the issue presented here analogous to that in *Forino*. In that case, a DUI arrestee had been issued an order of suspension and timely requested a hearing on his license suspension. At that time, the pertinent statute provided that the license suspension hearing "shall" be held no later than "thirty days after receipt of the request" for hearing. 1994 Ariz. Sess. Laws, ch. 317, § 19. The DOT, however, failed to hold the hearing within thirty days of Forino's request. The court held that the statutory language was directory and, as such, the failure to hold the license suspension hearing within the statutory time period did not divest DOT of jurisdiction to conduct the hearing and ultimately suspend Forino's driver's license. *Forino*, 191 Ariz. at 81, 952 P.2d at 319.

---

[2] In *HCZ Construction*, on which Way relies, the court emphasized that the legislature had used "both 'may' and 'shall' in the same paragraph of [the] statute," A.R.S. § 12-1191(A), thereby supporting an inference that "the Legislature acknowledged the difference and intended each word to carry its ordinary meaning." 199 Ariz. 361, ¶15, 18 P.3d 155, ¶15. In contrast, § 28-1321(D) has no such dichotomy and, therefore, we do not infer that the legislature necessarily intended to ascribe an ordinary meaning to the word "shall" in that statute. And, unlike *HCZ Construction*, Way has not cited or furnished any legislative materials that support his proffered interpretation of § 28-1321(D)(2)(b) as mandatory.

7

¶12　　　　As in *Forino*, this case concerns the effect of a delay in the civil, administrative license suspension hearing process that might result in an ALJ sustaining or reversing DOT's order of suspension. *See* § 28-1321(L) through (O). Specifically, at issue here is the effect of failing to immediately provide written notice to a DUI arrestee, who has refused to submit to testing, that his or her driver's license will be suspended and that the arrestee has the right to request a hearing to contest that suspension. *Forino* dealt with the effect of a failure to comply with the statutorily imposed deadline for such a hearing. We fail to see why, as a matter of statutory interpretation, a delay at the beginning of the suspension process mandates a different result than that reached in *Forino*.

¶13　　　　Numerous Arizona cases support the conclusion that mandatory language relating to the timeliness of a hearing generally should be construed as directory and that any delays in the process will not invalidate all subsequent proceedings.[3] *See Department of Revenue* (four-month delay in tax appeal did not require dismissal); *Lake Havasu City v. Arizona Dep't of Health Servs.*, 202 Ariz. 549, 48 P.3d 499 (App. 2002) (four-year delay by director of Department of Health Services in issuing decision did not void subsequent proceedings); *Francis v. Arizona Dep't of Transp., Motor Vehicle Div.*, 192 Ariz. 269, 963 P.2d 1092 (App. 1998) (reaffirming *Forino*); *Watahomigie v. Arizona Bd. of Water Quality Appeals*, 181 Ariz. 20, 887 P.2d 550 (App. 1994)

---

[3]Courts of other jurisdictions follow this approach as well. *See Outdoor Resorts/Palm Springs Owners' Ass'n v. Alcoholic Beverage Control Appeals Bd.*, 273 Cal. Rptr. 748, 751 (Cal. Ct. App. 1990) (thirty-day limitation directory, and statutes or rules establishing time within which decision must be rendered directory "unless a consequence or penalty is provided for failure to do the act within the time commanded"); *Meyers v. Maul*, 671 N.Y.S.2d 848, 849 (N.Y. App. Div. 1998) (failure of state agency to issue determination within thirty days of hearing as required by statute did not divest agency of jurisdiction because statute was directory).

(administrative regulations governing contents of notice of appeal not invalid despite failure to adopt such regulations within statutorily prescribed period); *Traylor v. Thorneycroft*, 134 Ariz. 482, 657 P.2d 895 (App. 1982) (failure to hold implied consent hearing within twenty days of petitioner's request as required by agency rule did not invalidate license suspension proceedings). We find those authorities persuasive in this context as well.

¶14　　　　Interpreting § 28-1321(D)(2)(b) as directory also finds support in the "general rule" that "if a statute 'states the time for performance of an official duty, without any language denying performance after a specified time, it is directory.'" *Forino*, 191 Ariz. at 81, 952 P.2d at 319, *quoting Watahomigie*, 181 Ariz. at 32, 887 P.2d at 562; *see also Department of Revenue*, 119 Ariz. at 514, 582 P.2d at 160; *Lake Havasu City*, 202 Ariz. 549, ¶7, 48 P.3d 499, ¶7; *cf. Lavidas v. Smith*, 195 Ariz. 250, ¶¶18, 21, 987 P.2d 212, ¶¶18, 21 (App. 1999) (statute specified that "insubstantial failure to comply" did not affect subsequent proceedings). Indeed, unlike § 28-1321(D)(2)(c), which "[r]equire[s] the immediate surrender" of the driver's license of a DUI arrestee who refuses to submit to testing, § 28-1321(D)(2)(b) does not specify *when* a law enforcement officer must serve an order of suspension on that person. Nor does § 28-1321 express a legislative intent to require dismissal of all subsequent proceedings if an officer fails to serve the order of suspension immediately upon a DUI arrestee's surrender of his or her driver's license.[4] In view of those omissions from the statute, an interpretation of § 28-1321(D)(2)(b) as mandatory rather than directory would be inconsistent with prior case law and the aforementioned

---

[4]Way does not contend that the officer's failure to issue a temporary driving permit to him when he was arrested and surrendered his driver's license invalidated all further proceedings or rendered DOT's suspension void. *See* § 28-1321(D)(2)(e). In any event, the same reasoning that leads us to construe § 28-1321(D)(2)(b) as directory would also apply to subsection (D)(2)(e).

general rule. We must interpret statutory language in a way that avoids such inconsistent or untenable results. *See State v. Estrada*, 201 Ariz. 247, ¶16, 34 P.3d 356, ¶16 (2001).

¶15        Additionally, to interpret § 28-1321(D)(2)(b) as mandatory would not give effect to the legislative purpose behind the implied consent statute—removal of drunk drivers from the roads. *See Campbell v. Superior Court*, 106 Ariz. 542, 546, 479 P.2d 685, 689 (1971); *Tornabene*, 203 Ariz. 326, ¶15, 54 P.3d 355, ¶15. A mandatory interpretation would provide a technical basis for avoiding an otherwise proper license suspension. *See Traylor*, 134 Ariz. at 483, 657 P.2d at 896. We thus agree with the superior court that the legislative purpose of the implied consent law is best served by "considering the language [of § 28-1321(D)(2)(b)] as directory." Accordingly, we hold that the officer's failure to serve an order of suspension on Way contemporaneously with the surrender of his driver's license did not invalidate all further proceedings or otherwise divest DOT of jurisdiction to subsequently suspend his license.[5]

## B.  Duration of License Suspension

¶16        In light of our holding, we next address the issue raised by both Way's appeal and the state's cross-appeal:  whether the one-year suspension of Way's license started when he surrendered his license on the date of his arrest or, rather, six weeks later when he actually

---

[5]We acknowledge that the pertinent statutes, though directory, apparently contemplate that if an officer takes the driver's license of a DUI arrestee who has refused testing, the officer generally should serve the order of suspension and issue the temporary driving permit at that time, rather than needlessly delaying the suspension process. *See Tornabene v. Bonine ex rel. Arizona Highway Dep't*, 203 Ariz. 326, ¶15, 54 P.3d 355, ¶15 (App. 2002) (sanction of license suspension for refusal to submit to test intended to quickly revoke licenses of dangerous drivers).  But, depending on the circumstances, such a simultaneous exchange might not be feasible or advisable if, for example, the arrestee is substantially impaired, has been hospitalized, or is otherwise incapacitated.

received the order of suspension.[6] Because resolution of this issue also involves statutory interpretation, our review is de novo. *Tornabene*; *Forino*.

¶17 Way contends that because a driver is required to physically possess a driver's license "at all times when operating a motor vehicle," A.R.S. § 28-3169(A), and because failure to do so constitutes a misdemeanor and may subject such a person to arrest, *see* A.R.S. § 28-1595(B); *State v. Bonillas*, 197 Ariz. 96, ¶7, 3 P.3d 1016, ¶7 (App. 1999), his license was effectively suspended when he surrendered it to police the night he was arrested. Consequently, Way argues, the ALJ was without authority to order Way's license suspended for one year from the date he received the order of suspension because the maximum period DOT may suspend a person's driver's license is one year. Although DOT generally may not suspend a license for more than one year, *see State v. Banicki*, 188 Ariz. 114, 116, 933 P.2d 571, 573 (App. 1997), we disagree with Way's premise that his license was effectively suspended when he surrendered it to the officer on July 13.

¶18 Section 28-3001(16), A.R.S., states that "'[s]uspension' means that the driver license *and driver's privilege to drive a motor vehicle* on the public highways of this state are temporarily withdrawn during the period of the suspension and until application for reinstatement is made." (Emphasis added.) In the context of the implied consent statute, a person's privilege

---

[6]Although neither party raises the issue, it appears that both the ALJ and the superior court incorrectly determined the effective date of suspension of Way's driver's license. As stated on the order of suspension, pursuant to A.R.S. § 28-1321(D)(2)(b), the effective date of suspension is fifteen days after service of the order of suspension. Therefore, at the earliest, Way's license would have been suspended either fifteen days after July 13, 2001, assuming the officer had served the order of suspension on Way then, or fifteen days after August 28, 2001, the date Way actually was served. This discrepancy, however, does not affect our analysis of the issues presented. And we do not modify the ALJ's order because the state does not seek that relief.

11

to drive is withdrawn fifteen days after a law enforcement officer serves or the DOT issues the written order of suspension. § 28-1321(D)(2)(b), (F)(1), (G)(3), (L).[7] Such written notice is consistent with both A.R.S. § 28-3306(C), which requires that, "[o]n suspending or revoking the license of a person . . . the [DOT] shall notify the licensee in writing," and with A.R.S. § 28-3318(A)(1), which states DOT "shall provide written notice to a person possessing a driver license . . . of . . .[a] suspension, revocation, cancellation or disqualification of the license or privilege to operate a motor vehicle." Thus, contrary to Way's argument, the statutes are clear that the surrender of one's driver's license, by itself, is not enough to constitute a "suspension"; there must also be a withdrawal of the "privilege to drive a motor vehicle," § 28-3001(16), which must be preceded by a written notice.[8]

¶19        Moreover, we find no support in the record for Way's contention that he "suffered the prejudice of having his driving privileges effectively suspended for a period of 6 weeks before the Order of Suspension was finally served upon him." *Cf. Forino*, 191 Ariz. at 81, 952 P.2d at 319 (DUI arrestee "had the burden to show prejudice" from delayed license suspension hearing). As the state points out, the record fails to show that Way did not drive during the interim between

---

[7]In accordance with those applicable statutes, the form itself also informs a DUI arrestee that, "[p]ursuant to ARS [§] 28-1321, your Arizona driver license/permit . . . is suspended effective 15 days from Date Served."

[8]Way asserts that "[t]aking a driver's license prevents a person from driving legally." From a practical, common sense standpoint, we agree that a reasonable person might so believe. Our analysis of the pertinent statutes, however, leads us to conclude that surrender of a driver's license does not necessarily equate to a license suspension for purposes of § 28-1321. And, as discussed in ¶19, the record does not reflect any prejudice to Way from his having surrendered his driver's license to the officer without also receiving a temporary driver permit until later. Accordingly, we leave for another day the more difficult issue, not presented here, of what effect any such showing of prejudice might have on the license suspension process or the starting date of the suspension.

surrender of his license and his receipt of the suspension order. Nor does the record reflect that Way drove without a license during that period or was cited or arrested for his failure to possess a driver's license. Way's argument that he would have been subject to arrest during the forty-six days in question merely presents a hypothetical, moot question that we decline to address. *See Contempo-Tempe Mobile Home Owners Ass'n v. Steinert*, 144 Ariz. 227, 229, 696 P.2d 1376, 1378 (App. 1985) ("The court is not empowered to decide moot questions or abstract propositions.").

¶20 Finally, Way's reliance on *State ex rel. Collins v. Scott*, 129 Ariz. 588, 589, 633 P.2d 397, 398 (1981), for the proposition that "the period of revocation [is] to run from the date the license is surrendered," is misplaced. In that case, a DUI arrestee had surrendered his license on the same day he had acknowledged receipt of the order of revocation. Thus, the supreme court did not need to reach the precise question raised here: whether the mere surrender of the driver's license constitutes a license suspension. Moreover, the statute at issue and analyzed in *Scott*, former A.R.S. § 28-448, has since been renumbered and amended and, thus, was no longer in effect when Way was arrested in July 2001. *See* A.R.S. § 28-3315; 1993 Ariz. Sess. Laws, ch. 178, § 21. In sum, absent any showing of prejudice, and because the statutes are clear that surrender of a driver's license, by itself, does not necessarily constitute or effectuate a withdrawal of a driver's privilege to operate a motor vehicle, § 28-3001(16), the superior court erred in modifying the duration of Way's license suspension.

## DISPOSITION

¶21 For the foregoing reasons, we affirm the ALJ's order suspending Way's license for one year commencing August 28, 2001, but vacate that part of the superior court's ruling that

13

ordered Way's one-year license suspension to begin on July 13, 2001. And, because Way has not prevailed on appeal, we deny his request for an award of attorney's fees pursuant to A.R.S. § 12-348.

_____
JOHN PELANDER, Presiding Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Chief Judge


_____
WILLIAM E. DRUKE, Judge (Retired)